In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 07-2378

MICHAEL ALLEN LAMBERT,

*Intervenor Plaintiff-Appellant,*

*v.*

ED BUSS, Superintendent,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 C 1859—**Richard L. Young**, *Judge.*

---

SUBMITTED JUNE 13, 2007—DECIDED JUNE 14, 2007
PUBLISHED AUGUST 9, 2007[Œ]

---

Before RIPPLE, KANNE, and EVANS, *Circuit Judges.*

PER CURIAM. Michael Lambert, who is scheduled to be executed by the State of Indiana before sunrise on June 15, 2007, is here for the fourth time. His three prior visits involved challenges to the death sentence he received growing out of the murder of a Muncie, Indiana, police officer in 1990. Just two days ago, on June 12, we

---

[Œ] This decision was originally released as an unpublished order. Upon request, the panel has determined that this decision should now issue as a published opinion.

denied Mr. Lambert's motion to recall the mandates in his first two appeals.

While challenges to his conviction and sentence have been going on for over 16 years, Lambert also intervened (on March 1, 2007) in a civil suit filed by another Indiana capital defendant, Norman Timberlake. David Woods, another Indiana capital defendant, was also an intervenor in the Timberlake civil suit.

The Timberlake suit involved a challenge to the constitutionality of the means by which Indiana carries out death sentences. Under a statute enacted in 1995, Indiana requires that execution be carried out by lethal injection. The first execution under the 1995 law occurred on July 18, 1996. The fifteenth execution under the law, that of Mr. Woods, occurred on May 5, 2007.

Mr. Woods moved for a preliminary injunction and a stay of execution in the Timberlake case, and those motions were denied, after a hearing, by District Judge Richard L. Young. We denied Woods's appeal from Judge Young's order on May 3, 2007. *Woods v. Buss*, No. 07-2001 (7th Cir).

On June 6, 2007, Mr. Lambert filed a request for a preliminary injunction in the Timberlake case. Judge Young notified the parties that he would consider the evidence presented during Woods's preliminary injunction hearing when ruling on Lambert's motion. Lambert did not object. On June 12, Judge Young, in a thorough and thoughtful decision, denied Lambert's motion for a preliminary injunction. Lambert now seeks a stay of execution pending his appeal from Judge Young's order.

The lethal injection procedure to be used on Lambert, called Operational Directive ISP 06-26, requires the introduction by intravenous catheter of 5 grams of sodium pentothal (an anesthetic to render the prisoner uncon-

scious), followed by 50 mg of sterile saline, followed by 100 mg of pancuronium bromide (a paralytic agent), followed by 50 mg of sterile saline, followed by 200 mEq of potassium chloride. The final drug stops the heart. This protocol is the same one used by Indiana to execute Mr. Woods last month.

Judge Young concluded that Mr. Lambert could not satisfy the stringent requirements for obtaining a preliminary injunction. Lambert, among other things, could not, said the judge, establish the requirement that he demonstrate a likelihood of success on the merits. We agree and adopt Judge Young's decision as our own. And with that, Lambert's motion for a stay of execution must be DENIED.

SO ORDERED.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

NORMAN TIMBERLAKE,                )
                                  )
                 Plaintiff,       )
                                  )
MICHAEL ALLEN LAMBERT,            )
                                  )    No. 1:06-cv-1859-RLY-WTL
              Intervenor Plaintiff, )
         vs.                      )
                                  )
ED BUSS, Superintendent,          )
 Indiana State Prison,            )
                                  )
                 Defendant.       )


**Entry Discussing Michael Lambert's Motion for Preliminary Injunction**

Michael Lambert ("Lambert") is on Indiana's death row because of his 1990 murder of a Muncie police officer. Indiana law prescribes that executions shall be carried out by lethal injection. IND. CODE § 35-38-6-1(a). Lambert's execution is set for June 15, 2007, only three days hence. He has joined Norman Timberlake, also on death row, in challenging the existing lethal injection protocol of the Indiana Department of Correction ("DOC"). David Leon Woods ("Woods"), recently executed pursuant to the challenged protocol, had also joined in the challenge, and the court is now presented with a sequel, perhaps sooner than the parties anticipated, to the motion for preliminary injunction of intervenor plaintiff Woods. As used herein, "defendant" or "Superintendent" refers to Indiana State Prison Superintendent Ed Buss. Through its Entry of June 8, 2007, the court notified the parties that in resolving Lambert's motion for preliminary injunction the court would consider, and the parties could do likewise, the evidence and argument presented in conjunction with the motion for preliminary injunction filed by Woods. This Entry constitutes the court's findings of fact and conclusions of law as to Lambert's motion. *Fed. R. Civ. P.* 52(a).

For the reasons explained in this Entry, Lambert's motion for preliminary injunction must be **denied.**

## Background

The action was filed by Timberlake on December 29, 2006. Lambert sought leave to intervene through a motion filed on March 1, 2007. This motion, along with a similar motion filed by Woods, was granted on April 10, 2007. Woods and Lambert then filed their respective statement of claims on April 17, 2007. This was followed, in Woods' case, with the filing of his application for a preliminary injunction on April 18, 2007. Proceedings were conducted on Woods' application for a preliminary injunction. This included an evidentiary hearing, conducted on April 26, 2007. All parties were present by counsel, and the Superintendent was present in person as well as at the hearing, although only Woods and the Superintendent participated in the hearing.[1] Woods' application for a preliminary injunction was denied. *Timberlake v. Buss,* 2007 WL 1280659 (S.D.Ind. May 1, 2007)(*Woods I*). That denial was affirmed on appeal in *Woods v. Buss,* 2007 WL 1302119 (7th Cir. May 3, 2007)(*Woods II*). He was executed on May 4, 2007, and Woods was dismissed as a party in this case on June 8, 2007, because the action as to him had become moot.

On May 18, 2007, this action was set for trial on September 22, 2007. Three days later, the Indiana Supreme Court set a June 15, 2007, date for Lambert's execution. Lambert's motion for preliminary injunction was filed on June 6, 2007, and has been fully briefed since June 8, 2007. He also sought to recall the mandates issued in his federal habeas challenges. That effort was rejected in *Lambert v. Buss,* Nos. 03-1015 & 05-2610 (7th Cir. June 12, 2007).

Lambert's claim is that under Indiana's execution protocol: (1) no physician, nurse or pharmacist is required to mix the lethal chemicals and that unqualified prison staff do this without supervision by appropriate medical personnel; (2) the physician's only duty is to pronounce death and to perform a cut-down procedure if necessary; (3) unqualified prison staff insert the IV lines and the protocol requires the performance of a cut-down procedure if a peripheral line cannot be inserted; (4) no medical equipment is attached to monitor the offender during the execution process; (5) no medical personnel are required to supervise the injection of the lethal contents; and (6) no medical personnel are required to physically examine the offender using standard clinical techniques to confirm that he is unconscious following injection of the first drug. Lambert claims that these steps will likely cause him to suffer excruciating pain when the second or third drug is administered. These circumstances, according to Lambert, violate his rights under the Eighth Amendment to the United States Constitution. The relief Lambert seeks in joining this action is an injunction prohibiting the Superintendent from executing Lambert by the proposed means of lethal injection.

Superintendent Buss has answered Lambert's claim and has responded to the motion for preliminary injunction.

---

[1]Lambert's counsel presented a point of clarification for the court's consideration at one point.

Details of the execution are left to the DOC to implement. IND. CODE § 35-38-6-1(d). The protocol which will be used in the impending execution is established in Operation Directive ISP 06-26 (March 6, 2007) (hereafter "Directive 06-26") and in select Indiana statutes. Superintendent Buss was principally responsible for the composition of Directive 06-26, though he consulted various sources in doing so.

There are three chemical stages to the lethal injection procedure. *See Cooey v. Strickland*, 479 F.3d 412, 414 (6th Cir. 2007). "The sodium thiopental is designed to anesthetize the prisoner and render him unconscious. Next, the pancuronium bromide paralyzes all of the prisoner's voluntary muscles but does not affect his sensation, consciousness, or ability to feel pain. Finally, the potassium chloride induces cardiac arrest."

Directive 06-26 is to be implemented through a series of procedures set forth in the Directive itself. As might be expected, the successful implementation of Directive 06-26 depends on several individuals with distinct responsibilities. Those individuals are sufficiently trained and experienced, and the procedures to guide them in carrying out their responsibilities are sufficiently detailed, so as to not create a significant and unnecessary risk that Lambert will suffer unnecessary pain during the execution process. Directive 06-26 itself and the Superintendent's approach to this task show that the planning and preparation for Lambert's execution have been undertaken with great care. By way of illustration:

- The mixture and injection of the chemicals is carefully arranged by members of the IV team. The chemicals are mixed approximately 40 minutes before they are to be used. All members of the IV team, and some members of the injection team, have now been trained in IV therapy and are now certified to start, maintain and sustain intravenous lines. The injection site is monitored, as is the tubing. A physician is in the immediate vicinity of the execution chamber if needed for either consultation, inspection or repair of any aspect of the intravenous line.

- The sequence of the chemical injections is directed by the Superintendent, who with trained members of his staff determine when injection of the next chemical is appropriate. If a line becomes infiltrated, or if there is leakage or stoppage, for example, that situation would be rectified before continuing with either completion of the chemical presently being injected or injection of the next chemical.

- Two complete sets of syringes are prepared. One set is used as a backup in the event the first attempt fails. The syringes are numbered and color coded.

- After being escorted to the execution chamber, the offender is placed onto a stationary surgical gurney with his arms exposed. His arms are fastened to the gurney at the wrist, and his legs are fastened to the gurney, each with leather restraints. Bilateral IV fluid drips are established in the veins of the inmate's arms. One line is selected as the line in which the chemicals are placed. The IV line is started with a saline solution. The catheter is held to the arm with tape. The purpose of the first chemical, sodium pentothal, is to act as an anesthetic. The effectiveness of the sodium pentothal is confirmed before the second chemical is injected. This is done through confirmation that the offender has lost consciousness, shows no

3

reflex or muscle response and has no response to noxious stimuli (ammonia tablets).

- When the injection process is complete, the physician enters the room to check the offender for signs of life. The actual time of death is when the physician pronounces death.

As noted in *Woods I,* there have been 14 executions by lethal injections at the Indiana State Prison since 1995, and Superintendent Buss is an experienced prison administrator. He has performed various roles in 9 of those 14 executions at the Indiana State Prison. He has supervised the most recent 3 executions in the State of Indiana as Superintendent, a position he has held since August 2005. These numbers have each increased by one (1) in recent weeks, of course, because of the Woods' execution itself.

## Discussion

Lambert's claim is brought pursuant to 42 U.S.C. § 1983. In *Nelson v. Campbell,* 541 U.S. 637, 644 (2004), the Supreme Court held that a condemned prisoner may raise an Eighth Amendment "cruel and unusual punishment" challenge to a specific ancillary medical procedure that is not a mandatory part of the execution protocol pursuant to 42 U.S.C. § 1983. In *Hill v. McDonough,* 126 S. Ct. 2096, 2102 (2006), the Court held that the condemned can challenge the drug cocktail under § 1983 so long as he accepts the inevitability of execution.

In the particular context presented by Lambert's claim, the pivotal question concerning the merits of this claim is not what is optimally desirable, as, for example, in a surgical setting, but rather what is minimally required to avoid a violation of the Eighth Amendment. *See generally Gregg v. Georgia,* 428 U.S. 153, 173 (1976) (holding that punishments are cruel when they "involve the unnecessary and wanton infliction of pain").

The United States Supreme Court has never held that execution by lethal injection constitutes cruel and unusual punishment. *See, e.g., Stewart v. LaGrand,* 526 U.S. 115, 119 (1999). "Indeed, a number of jurisdictions have rejected such claims." *Belisle v. State,* 2007 WL 625025, *49 (Ala.Crim.App. 2007)(citing cases). Nonetheless, the Eighth Amendment requires that executions, whether by lethal injection or otherwise, be carried out in a manner which does not constitute cruel and unusual punishment.

*Hill* and *Nelson* emphasize two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits. *See Hill,* 126 S. Ct. 2096; *Nelson,* 541 U.S. 649-50. Each question is explored in the setting of Lambert's application for a preliminary injunction.

"To prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *FoodComm Intern v. Berry,* 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that

4

could be caused to either party. *Incredible Tech., Inc. v. Virtual Tech., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005). In *Woods II,* the Court of Appeal noted that this Court in *Woods I* had:

> rejected Woods' claims on two grounds. First, it held that Woods had failed to demonstrate that Indiana's lethal injection method violates the Eighth Amendment prohibition on cruel and unusual punishment. Second, the district court held that the last minute nature of Woods' claims strongly counseled against granting him relief.

*Woods v. Buss,* 2007 WL 1302119, at *1. This corresponded to a finding that Woods had failed to make an adequate showing as to the first factor for the issuance of a preliminary injunction, as well as the fourth "balancing" factor. Lambert's motion, as will be seen, suffers from these same infirmities.

*Likelihood Of Success on the Merits.* "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill,* 126 S. Ct. at 2104. The conclusions of law relative to an Eighth Amendment violation vis-a-vis the DOC's execution protocol in Directive 06-26 set forth in *Woods I* are adopted by reference as if set forth herein in their entirety. Lambert has not shown a reasonable likelihood of success on the merits of his underlying claim. Two factors support this conclusion. *First,* both as written and as it will be applied, Directive 06-26, does not create a significant and unnecessary risk that Lambert will suffer unnecessary pain during the execution process. *Second,* the defendant has negated the existence of the equally necessary subjective element of an Eighth Amendment violation-the requirement of deliberate indifference. The court has found that Directive 06-26 does not create a significant and unnecessary risk that Lambert will suffer unnecessary pain during the execution process. Not only has Lambert failed to offer evidence of deliberate indifference here, but Superintendent Buss has affirmatively negated the existence of this element of an Eighth Amendment violation. "There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm." *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997) (citing *Farmer).* "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer,* 511 U.S. at 845.

*Lack of an Adequate Remedy at Law.* The Supreme Court reiterated in *Hill,* 126 S. Ct. at 2104, that "a stay of execution is an equitable remedy." Lambert has no adequate remedy at law. This factor weighs in his favor.

*Likelihood Of Irreparable Harm To Plaintiff.* Lambert has not shown the existence of irreparable harm through the mere possibility that some unforseen complication will result in a lingering death causing Lambert to suffer unnecessary pain. He cannot rely on this possibility as the grounds for substantial risk of harm.
*Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 464 (1947); *Beardslee v. Woodford,* 395 F.3d 1064, 1075 (9th Cir. 2005); *Reid v. Johnson,* 333 F.Supp.2d 543, 551 (E.D.Va. 2004).

*Balances of the Relative Harms.* "Because Lambert seeks injunctive relief, he has the burden of proving by a clear showing that a balancing of the equities falls in his favor." *See Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). Lambert claims that the equities lie in his favor in granting his motion for a preliminary injunction because the Indiana Supreme Court set Lambert's execution after Lambert intervened and after this matter was set for trial. Lambert filed his motion to intervene in this action on March 1, 2007.

As highlighted in *Woods I,* the Supreme Court has set out the factors relevant to granting a stay in the context of an impending execution:

> A stay is an equitable remedy, and equity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempts at manipulation. Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

*Nelson,* 541 U.S. at 649-50 (citations and quotations omitted). The Supreme Court has stressed the need to be wary of obvious dilatory tactics and to guard against "abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process." *Gomez v. United States Dist. Ct.,* 503 U.S. 653, 654 (1992)("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief."). With its issuance of *Hill,* the Supreme Court emphasized that "the federal courts can and should protect states from dilatory . . . suits." *See Hill,* 126 S. Ct. at 2104. The Court also highlighted the equitable powers of the federal courts "to dismiss suits [that are] speculative or filed too late in the day." *Id.; see also Smith v. Johnson,* 440 F.3d 262, 263 (5th Cir. 2006).

This is a case where, indisputably, the equities tilt against Lambert as to the timing of his joinder in this case, just as they did against Woods. Consequently, the two critical factors emphasized in *Hill* and *Nelson*, whether the inmate has delayed unnecessarily in bringing the claim and whether the inmate shows a significant probability of success on the merits in determining whether to issue a stay, have not been satisfied by Lambert. Lethal injection challenges became common in this country in 2000 and have remained so. *See, e.g., Cooper v. Rimmer,* 358 F.3d 655 (9th Cir. 2004) (rejecting an Eighth Amendment challenge to lethal-injection protocol); *Harris v. Johnson,* 376 F.3d 414 (5th Cir. 2004) (same); *State v. Webb,* 750 A.2d 448 (Conn. 2000) (same); *Sims v. State,* 754 So.2d 657 (Fla. 2000) (same). Lambert has been on Indiana's death row since at least early 1997. He was scheduled to be executed on June 22, 2005, but was not executed because a stay of execution was entered on June 17, 2005, by the Seventh Circuit Court of Appeals in No. 05-2610. The parties have not mentioned this fact, but it is this fact which placed Lambert at death's doorstep two years ago, 21 months before he sought to intervene in this case. By failing to act until March 2007, Lambert ran the risk that an execution date would be set while his challenge to the method of execution lawsuit was pending. *See Jones v. Allen,* 2007 WL 1140416, at *10 (M.D.Ala. April 17, 2007), *aff'd.,* 485 F.3d 635 (11th Cir. 2007). That risk has come to pass.

The Supreme Court recognized in *Hill* that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence," 126 S. Ct. at 2104, and nothing in *Hill* diminishes or disparages this interest. The Court reiterated in *Hill* what it said in *Nelson,* 541 U.S. at 649-50, that a stay of execution is an equitable remedy, not available as a matter of right, and that how federal courts considering granting a stay must be "sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill,* 126 S. Ct. at 2104. "That interest is heightened when lengthy state and federal proceedings reviewing the conviction have run their course." *Baker v. Saar,* 402 F.Supp.2d 606, 608 (D.Md. 2005). That has occurred for Lambert and equity does not stand in the way, either because of his challenge to the lethal injection protocol or on any other discernible basis.

When considering the foregoing circumstances, and when considering "the extent to which [Lambert] has delayed unnecessarily in bringing the claim," *Nelson,* 541 U.S. at 649-650, and giving appropriate regard to the "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," *id.,* at 650, knowing that the merits of Lambert's claim in intervention could not be reached without the entry of a stay, Lambert's motion for preliminary injunction must be denied on the basis of his delay in bringing (or joining) a challenge to the execution protocol.

*Woods I* has not been meaningfully distinguished by Lambert from his circumstances at present. The Missouri protocol which Lambert champions does not set the constitutional standard, any more than did the testimony of Dr. Heath at the Woods' evidentiary hearing on April 26, 2007. A case from this court which traveled a similar path is *Bieghler v. Donahue,* No. 06-1300 (S.D.Ind. January 26, 2006), wherein Chief Judge McKinney considered the § 1983 challenge to the method of execution brought by an inmate on Indiana's death row. After finding that this was the proper remedial vehicle, after reciting the standard of its review pursuant to 28 U.S.C. § 1915A(b), and after reviewing the standard established in *Nelson,* Judge McKinney denied Bieghler's request for injunctive relief and dismissed the action, explaining: "Bieghler has delayed unnecessarily in seeking relief. The equities now lie with the ability of the State of Indiana to execute the sentence Bieghler received and which has withstood decades of review." *Id.,* slip op. at p. 3. An immediate appeal was taken. A panel of the Seventh Circuit, with one judge dissenting, stayed Bieghler's execution. 163 Fed.Appx. 419 (7th Cir. January 26, 2006). The case moved forward, and the Supreme Court vacated the Seventh Circuit's Order. 126 S. Ct. 1190 (2006). Bieghler's execution then went forward. Although the literal timing of Bieghler's case and that of Lambert are different relative to their anticipated executions, analytically the timing is the same; no relief could be granted without preventing the State from carrying out the executions as scheduled. *See also White v. Johnson,* 429 F.3d 572, 574 (5th Cir. 2005)(affirming district court's dismissal of a prisoner's section 1983 challenge to his execution because he delayed filing the challenge until his execution was imminent despite being on death row for more than six years).

Lambert seeks to avoid his June 15, 2007, execution by invoking the All Writs Act, 28 U.S.C. § 1651(a), which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This effort is entirely misplaced, because the All Writs Act is a provision which effectuates the court's jurisdiction,

7

not a separate grant of jurisdiction. *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364 (7th Cir. 1983)("The intent of the Act is to effectuate established jurisdiction, not to enlarge it."). There is no reason why the All Writs Act can or should be used to thwart the proper application of the factors associated with the issuance or denial of a preliminary injunction. The same is true, of course, of the Anti-injunction Act, which Lambert also cites.

## Conclusion

"A court considering a stay [of execution] must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill v. McDonough,* 126 S. Ct. 2096, 2104 (2006)(quoting *Nelson v. Campbell,* 541 U.S. 637, 650 (2004)). Lambert has failed to overcome that strong equitable presumption here. In addition, because the evidence shows that implementing Directive 06-26 is not likely to "involve the unnecessary and wanton infliction of pain" or to "involve torture or a lingering death," Lambert has failed to demonstrate by a preponderance of the evidence that any violation of his federally secured rights is likely to occur in the course of his execution as presently scheduled. This means that he has not shown a reasonable likelihood of success on the merits of the underlying claim. He has also failed to establish any of the other factors required for the issuance of a preliminary injunction. Based on the facts and law set forth in this Entry, therefore, Lambert's motion for preliminary injunction must be and is now **DENIED.**

**IT IS SO ORDERED.**

Date:  June 12, 2007

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*