# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2008

Charles R. Fulbruge III
Clerk

No. 08-70028

ALAN DALE WALKER, PAUL EVERETT WOODWARD, GERALD JAMES HOLLAND, and DALE LEO BISHOP

                                                    Petitioners-Appellants

V.

CHRISTOPHER EPPS, Commissioner of the Mississippi Department of Corrections, LAWRENCE KELLY, Superintendent of the Mississippi State Penitentiary at Parchman, and JOHN DOES 1-50

                                                    Respondents-Appellees

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:07-CV-176

---

Before KING, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Plaintiff-Appellant Dale Leo Bishop filed an emergency application for an injunction and/or stay of execution pending appeal of the district court's dismissal of his 42 U.S.C. § 1983 complaint and motion for injunctive relief. For the following reasons, we deny Bishop's emergency application.

---

[*] Pursuant to 5TH CIR. R. 47.5, this court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On October 18, 2007, Bishop, a prisoner sentenced to death and currently in the custody of the Mississippi Department of Corrections, joined with Alan Dale Walker, Paul Everett Woodward, and Gerald James Holland, other death-row inmates (collectively, the "plaintiffs"), and filed a lawsuit against: Christopher Epps, the Commissioner of the Mississippi Department of Corrections; Lawrence Kelly, the Superintendent of the Mississippi State Penitentiary at Parchman; and John Does 1-50 (collectively, the "State"). The plaintiffs challenged the constitutionality of Mississippi's lethal injection protocol under 42 U.S.C. § 1983, and requested injunctive relief to prevent the State from executing the plaintiffs until their § 1983 claim was resolved. Specifically, the plaintiffs alleged that the lethal injection protocol used in Mississippi "unnecessarily risks infliction of pain and suffering."

Originally, a fifth death-row inmate, Earl Wesley Berry, joined in the lawsuit, but the district court dismissed his § 1983 claim as dilatory on October 23, 2007, pursuant to a motion by the State. It also denied injunctive relief that would have prevented the State from executing Berry on October 30, 2007. Without reaching the merits of Berry's § 1983 claim, this court affirmed the district court's rulings on October 26, 2007, stating that "[o]nly now, mere days before his scheduled execution, does Berry first challenge the execution protocol used in Mississippi[; therefore,] [o]ur precedent requires the dismissal of 'eleventh hour' dilatory claims such as Berry's." Berry v. Epps, 506 F.3d 402, 405 (5th Cir. 2007) (per curiam).

Berry petitioned the Supreme Court for certiorari and the Court stayed the execution on October 30, 2007, pending disposition of his petition. Berry v. Epps, 128 S. Ct. 531 (2007). Ultimately, the Supreme Court denied Berry's petition for certiorari on April 21, 2008, see Berry v. Epps, 128 S. Ct. 2048 (2008), but during the pendency of Berry's stay, no action was taken in the plaintiffs' § 1983 case.

The State failed to respond to the plaintiffs' complaint and the plaintiffs moved for a default judgment. On May 5, 2008, the district court clerk entered a default judgment against the State for their failure to answer the complaint. On May 16, 2008, however, upon the State's motion, the district court set aside the default judgment, finding that the State satisfied the requirements of Rule 55 of the Federal Rules of Civil Procedure, which allows courts to set aside default judgments for good cause. See Walker v. Epps, No. 4:07-CV-176, 2008 WL 2095696, at *2 (N.D. Miss. May 16, 2008).[1]

The State answered the plaintiffs' complaint on May 21, 2008 and moved for summary judgment on May 28, 2008, arguing that the plaintiffs had failed to file their § 1983 claim within the applicable limitations period. The plaintiffs asserted that the equitable doctrine of laches applied, but alternatively argued that, even if a statute of limitations applied, their claims should not be barred because (1) the basis for their claims could not be discovered within the applicable limitations period, (2) the State's fraudulent concealment of its execution protocol tolled the limitations period, (3) the imposition of the current protocol constitutes a continuing tort that resets the statute of limitations upon each wrongful act, and (4) the principles of equitable estoppel prevent the State from asserting the statute of limitations against them. The district court rejected all of the plaintiffs' arguments and granted summary judgment for the State after finding the plaintiffs' claim time-barred by Mississippi's statute of limitations. See Walker v. Epps, No. 4:07-CV-176, slip op. at 8–13 (N.D. Miss. July 15, 2008). The plaintiffs immediately filed a notice of appeal in this court,

---

[1] The plaintiffs, in a cross-motion, requested that the district court condition relief from the entry of default upon the State's agreement not to seek an execution date on any future plaintiff while the instant case was pending and refrain from asserting time-based or procedural defenses to the plaintiffs' requests for injunctive relief. They also requested that relief be conditioned on the State's agreement to reinstate Berry's claims and stay his execution pending the outcome of the § 1983 claims. The district court denied the plaintiffs' cross-motion in its May 16, 2008 order. Berry was executed on May 21, 2008.

challenging the district court's order setting aside the default judgment, as well as its order granting summary judgment to the State and denying the plaintiffs' request for a preliminary injunction. Walker v. Epps, No. 4:07-CV-176, slip op. (N.D. Miss. July 15, 2008), appeal docketed, No. 08-70028 (5th Cir. July 16, 2008).

In parallel proceedings, Bishop exhausted his direct and collateral appeals of his February 2000 conviction for capital murder with an underlying felony of kidnapping.[2] On June 23, 2008, the State moved to reset Bishop's execution date to July 23, 2008, and the Mississippi Supreme Court granted the motion on July 1, 2008. On July 17, 2008, Bishop filed in this court an emergency application for an injunction or stay of execution only on his own behalf, pending our consideration of the plaintiffs' appeal of the district court's dismissal of their § 1983 claim. It is solely Bishop's emergency application that is before us now.

---

[2] The Supreme Court of Mississippi affirmed Bishop's conviction and sentence in February 2002 and denied his motion for rehearing in April 2002. See Bishop v. State, 812 So. 2d 934, 937 (Miss. 2002) (en banc). Bishop filed a petition for a writ of certiorari to the United States Supreme Court which was denied on October 21, 2002. See Bishop v. Mississippi, 537 U.S. 976 (2002). Bishop then returned to the Supreme Court of Mississippi and filed an application for post-conviction habeas relief, alleging eight grounds for relief, but the Supreme Court of Mississippi denied his application for habeas relief in July 2004. See Bishop v. State, 882 So. 2d 135, 156 (Miss. 2004) (en banc). Bishop then appealed that denial of post-conviction relief to the United States Supreme Court, which denied his petition for a writ of certiorari. See Bishop v. Mississippi, 543 U.S. 1189 (2005).

Bishop next sought relief by filing a petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi on March 28, 2005, which he amended on October 16, 2005. He alleged thirteen grounds for relief. The district court denied Bishop's petition for habeas relief and entered judgment on August 16, 2007. See Bishop v. Epps, No. 1:04-CV-319, 2007 WL 2363465, at *36 (N.D. Miss. Aug. 16, 2007). The district court also denied Bishop's motion for issuance of a Certificate of Appealability ("COA") dated September 13, 2007, in which he raised four claims, including (1) ineffective assistance of post-conviction counsel, (2) ineffective assistance of trial counsel, (3) improper jury instruction, and (4) improper waiver of jury sentencing. Bishop v. Epps, No. 1:04-CV-319, 2007 WL 2727228, at *1, 5 (N.D. Miss. Sept. 17, 2007). Bishop moved for issuance of a COA in this court, raising the same claims he presented to the district court, but we denied Bishop's motion. Bishop v. Epps, 265 F. App'x 285, 295 (5th Cir. 2008).

The facts underlying Bishop's conviction are outlined in our opinion denying Bishop's motion for a COA. See id. at 287–88.

## II. DISCUSSION

Bishop argues incorrectly that our standard for granting a stay of execution pending appeal requires us to decide merely whether "jurists of reason would find the District Court's decision [at issue on appeal] debatable." Generally, in deciding whether we will issue a stay pending appeal, we must consider several factors. "So well-established in this circuit as to be a rubric," these criteria include:

> (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir. 1982) (Ruiz II) (internal quotations omitted); see also Buxton v. Collins, 925 F.2d 816, 819 (5th Cir. 1991). Indeed, "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." Hill v. McDonough, 547 U.S. 573, 583–84 (2006). A stay of execution "is not available as a matter or right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Id. at 584. Although "federal courts can and should protect States from dilatory or speculative suits," id. at 585, the Supreme Court has made clear that, "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Id. at 584.[3]

---

[3] A number of requests for stays of execution pending resolution of § 1983 claims have been denied by this court for the reason that the filings of the inmates' claims were dilatory. See, e.g., Brown v. Livingston, 457 F.3d 390, 391 (5th Cir. 2006); Resendiz v. Livingston, 454 F.3d 455, 455 (5th Cir. 2006). It is well-settled in this circuit that "death-sentenced inmates may not wait until execution is imminent before filing an action to enjoin a State's method of carrying it out." Berry v. Epps, 506 F.3d 402 404 (5th Cir. 2007) (citing Harris v. Johnson, 376

Bishop bears the burden of establishing the prerequisites for granting a stay. See Ruiz II, 666 F.2d at 856. "While 'the movant need not always show a 'probability' of success on the merits,' he must 'present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities, [i.e. the other three factors] weighs heavily in the favor of granting the stay.'" O'Bryan v. McKaskle, 729 F.2d 991, 993 (5th Cir. 1984) (quoting id.).

To demonstrate his likelihood of success on the merits, Bishop avoids the merits of his § 1983 claim and instead argues in detail the reasons he believes the district court erred in applying Mississippi's statute of limitations to his claim. We reserve ruling on whether the district court erred in applying a statute of limitations to dismiss the plaintiffs' claim and defer that issue until the resolution of the remaining plaintiffs' direct appeal.[4] However, the fact that the district court allegedly committed a procedural error in concluding that Bishop's claim was time-barred does not show irreparable harm, the second

---

F.3d 414, 416–17 (5th Cir. 2004)). In Brown and Resendez, for example, the inmates filed § 1983 claims shortly before their scheduled execution date. See, e.g., Brown, 457 F.3d at 391 (filing § 1983 claim six days before execution date); Resendiz v. Livingston, No. H-06-CV-818, 2006 WL 1787989, at *3 (S.D. Tex. 2006) (noting that Resendiz did not join § 1983 claim until days before his scheduled execution). Here, Bishop's direct appeals became final on October 21, 2002. On May 24, 2004, the Supreme Court confirmed that § 1983 could be used by an inmate to challenge a state's execution protocol, if the § 1983 action did not necessarily prevent the state from administering the execution. Nelson v. Campbell, 541 U.S. 637, 647–48 (2004). Bishop did not file his § 1983 claim until October 18, 2007. Precedent exists to deny Bishop's request for stay of execution for dilatoriness alone. See Reese v. Livingston, 453 F.3d 289, 291 (5th Cir. 2006) (denying inmates request for stay of execution pending appeal of § 1983 claim after finding that he filed his claim three years after his sentence became final). However, because we are cognizant of the Supreme Court's instruction in Hill and acknowledge the dissents in Brown and Resendiz, we perform a complete analysis of the traditional factors for granting a stay.

[4] Bishop's emergency application for a stay and his briefing regarding the district court's grant of summary judgment to the State were filed only on his behalf. Because of his scheduled execution date, we must expedite the consideration of his application. The remaining plaintiffs, Alan Dale Walker, Paul Everett Woodward, and Gerald James Holland, are proceeding on the standard timeframe for their direct appeal and have the opportunity to file briefs.

factor we must consider in deciding whether or not to grant a stay. Indeed, the merits of his case are essential to our determination of whether he will suffer irreparable harm if a stay does not issue.

In Chief Justice Roberts' plurality opinion in Baze v. Rees, he explained:

> A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and viable alternatives. A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard.

128 S. Ct. 1520, 1537 (2008). In his stay application, Bishop has made no such showing. Mississippi's lethal injection protocol appears to be substantially similar to Kentucky's protocol that was examined in Baze. But Bishop has not demonstrated irreparable harm "through the mere possibility that some unforeseen complication will result in a lingering death causing [him] to suffer unnecessary pain[; therefore,] [h]e cannot rely on this possibility as the grounds for substantial risk of harm." See Lambert v. Buss, 498 F.3d 446, 452 (7th Cir. 2007) (citing Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464 (1947) and Beardslee v. Woodford, 395 F.3d 1064, 1075 (9th Cir. 2005)). Indeed, to establish irreparable harm, "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." United States v. Emerson, 270 F.3d 203, 262 (5th Cir. 2001) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995)).

In addition to failing to meet his burden for establishing a likelihood of success on the merits and demonstrating irreparable harm, Bishop did not address the final two factors that we must consider, including the "State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Hill, 547 U.S. at 574. He makes no arguments regarding

"whether the granting of the stay would substantially harm the other parties" or "whether the granting of the stay would serve the public interest." Ruiz II, 666 F.2d at 856.

## III.  CONCLUSION

We hold that Bishop has not met his burden for establishing the criteria for granting a stay; therefore, we must conclude and order that the motion for an injunction and/or a stay of execution pending appeal be DENIED.


KING, Circuit Judge, dissenting:

I respectfully dissent from the order denying a stay of execution.

I have been extremely reluctant to issue a stay when an execution date is imminent.  States have a strong interest in the timely enforcement of their lawfully-rendered judgments.  This is especially so when an inmate has had the benefit of both a direct appeal and collateral proceedings, but waits until the "eleventh hour" to challenge the method by which he is to be executed.  As the Supreme Court explained in Hill v. McDonough, 547 U.S. 573, 583–84 (2006), where the inmate waited until four days before his scheduled execution to file a § 1983 method-of-execution claim, "[f]iling [such] an action . . . does not entitle the complainant to an order staying an execution as a matter of course."  Rather, "federal courts can and should protect States from dilatory or speculative suits . . . ."  Id. at 585.  Similarly, in a case in which the inmate filed a claim only three days before his scheduled execution, the Court explained that in addition to considering the normal stay equities, including the likelihood of success on the merits and the relative harms to the parties, courts must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim."  Nelson v. Campbell, 541 U.S. 637, 649–50 (2004).  Accordingly, this circuit has been exceedingly unwilling in method-of-execution cases to grant a stay or otherwise intervene to halt an execution when inmates have been aware of their potential

claims but delayed filing suit until shortly before a scheduled execution. See Berry v. Epps, 506 F.3d 402, 403–05 (5th Cir. 2007) (denying stay and affirming dismissal where inmate did not file suit until twelve days before scheduled execution); Dickson v. Livingston, 232 F. App'x 398, 399 (5th Cir. 2007) (unpublished) (affirming dismissal where inmate did not file suit until the day of his scheduled execution); Pippin v. Quarterman, 223 F. App'x 433 (5th Cir. 2007) (unpublished) (denying stay and affirming dismissal where inmate did not file suit until six days before his scheduled execution); Summers v. Tex. Dep't of Criminal Justice, 206 F. App'x 317, 318 (5th Cir. 2006) (unpublished) (same where inmate did not file suit until fifteen days before his scheduled execution); Brown v. Livingston, 457 F.3d 390, 391 (5th Cir. 2006) (same where inmate did not file suit until six days before his scheduled execution); Resendiz v. Livingston, 454 F.3d 455 (5th Cir. 2006) (same where inmate waited until three days before his scheduled execution to file pleadings to join § 1983 suit, see district court's order at Resendiz v. Livingston, No. H-06-CV-818, 2006 WL 1787989, at *1 (S.D. Tex. June 26, 2006)); Wilson v. Livingston, 179 F. App'x 228, 229 (5th Cir. 2006) (unpublished) (denying stay and dismissing appeal where inmate did not file suit until seven days before his scheduled execution); Kincy v. Livingston, 173 F. App'x 341, 342–43 (5th Cir. 2006) (unpublished) (denying stay and affirming dismissal where inmate did not file suit until twenty-seven days before his scheduled execution); Hughes v. Johnson, 170 F. App'x 878, 879–80 (5th Cir. 2006) (unpublished) (same where inmate did not file suit until fourteen days before his scheduled execution); Smith v. Johnson, 440 F.3d 262, 263–64 (5th Cir. 2006) (same where inmate did not file suit until five days before his scheduled execution); Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) (affirming dismissal where inmate did not file suit until two days before his scheduled execution); Harris v. Johnson, 376 F.3d 414, 416–17 (5th Cir. 2004) (vacating TRO prohibiting state from carrying out execution and rendering

judgment of dismissal where inmate did not file suit until ten weeks before his scheduled execution).

I recognize that Bishop's claim bears many of the hallmarks of a dilatory claim. Bishop committed the crime for which he was convicted in December 1998, and his direct appeal became final when the Supreme Court denied certiorari on October 21, 2002. He did not bring his challenge to the method by which Mississippi intends to execute him, however, until October 18, 2007. Nonetheless, there are countervailing considerations present here—including the State's own dilatory actions in the district court—that cause me to conclude that this is the rare case in which the equities favor granting a stay.

First, I stress that unlike the inmates in Hill, Nelson, and the similar cases from this circuit collected above, Bishop did not file this lawsuit as an eleventh-hour attempt to stave off an impending execution. In fact, Bishop filed suit nine months ago (shortly after certiorari was granted in a case challenging Kentucky's lethal injection protocol, see Baze v. Rees, 128 S. Ct. 34 (Sept. 25, 2007)), at a time when his federal habeas proceedings were not yet final and an execution date had not yet been set. The State, however, after obtaining a dismissal on equitable grounds against one of Bishop's co-plaintiffs (who did have an execution date scheduled), failed to file an answer or otherwise engage the claims of Bishop and the remaining plaintiffs who did not have execution dates pending, and a default judgment was ultimately entered against the State. It was not until May 16, 2008, that this default judgment was set aside and the lawsuit actually commenced. In other words, due to the State's failure to timely respond to the lawsuit, six months passed in which discovery could have been conducted and, proceeding expeditiously (as we are now asked to do), all aspects of the case (including the adequacy of Mississippi's lethal injection protocol) could have been developed, resulting in a more complete record as well as time for an appeal to be taken in a more orderly fashion. I also cannot help but note

that the State, though apparently incapable of responding to Bishop's claim in any way for six months, did manage to file a motion to set an execution date with the Mississippi Supreme Court on June 23, 2008—the very same day that the Supreme Court denied certiorari in Bishop's habeas proceeding and the first day that Mississippi law allows for such a motion to be made when post-conviction proceedings have been taken. And so it came to be that the State, having ignored Bishop's suit for six months, now urges that the equities do not favor a stay because of Bishop's own delay.

The majority errs, in my view, in faulting Bishop for not making a showing in his stay application that Mississippi's protocol "creates a demonstrated risk of severe pain," a standard advanced by the plurality opinion in Baze v. Rees, 128 S. Ct. 1520 (2008), that the majority apparently believes to be controlling in this context. The fact is that Bishop has put forward evidence that, if credited, tends to show that Mississippi's method of execution creates such a risk. In an affidavit filed in the district court—and attached to the stay application in this court—Bishop's expert identifies several aspects of the protocol that, in his opinion, undermine Mississippi's ability to reliably carry out a humane execution by lethal injection. Of course, there is also evidence to the contrary, but this issue never was fully developed in the district court (as it perhaps could have been if the State had timely responded to this lawsuit), and the case was ultimately decided on statute of limitations grounds. Bishop understandably did not make the question of the risk created by the protocol the focus of his stay application because the requirements for equitable relief compel him to make a showing of probable success on the merits of the subject of this appeal, i.e., the statute of limitations issue. The adequacy of the protocol simply was not the basis for the district court's decision. Bishop has, however, provided competent evidence on this point.

Moreover, given the fact that the adequacy of Mississippi's protocol was effectively never litigated in this case, it seems to me highly inappropriate for the majority to import from Baze language suggesting that a stay may not be granted unless a showing is made of a substantial risk of severe pain, and then go on to decide whether such a showing has been made. Putting aside the fact that Bishop arguably has made such a showing (as discussed above), the effect of this is, again, to require Bishop to show a likelihood of success on the merits of an issue that was not developed below and is not part of this appeal.

It has generally been our practice to avoid addressing the underlying merits of method-of-execution claims when dealing with requests for last-minute stays (or their functional equivalent, appeals from dismissals in the district courts for delay), and instead to rely upon equitable considerations relating to the inmate's delay. See, e.g., Berry, 506 F.3d at 405 (denying stay and affirming dismissal on grounds of delay without reaching merits of claim); Dickson, 232 F. App'x at 398–99 (affirming dismissal without reaching merits); Summers, 206 F. App'x at 319–21 (denying stay and affirming dismissal without reaching merits); Brown, 457 F.3d at 390–91 (same); Wilson, 179 F. App'x at 228–29 (denying stay without reaching merits); Kincy, 173 F. App'x at 342 (denying stay and affirming dismissal "regardless whether [the inmate] now states a claim"); Hughes, 170 F. App'x at 879 (same "[w]hether or not [the inmate] properly states a claim"); Smith, 440 F.3d at 263 (same); Neville, 440 F.3d at 222–23 (affirming dismissal without reaching merits); Harris, 376 F.3d at 417 ("We do not decide whether [the inmate] properly states a claim . . . ."). The truth is that, at least pre-Baze, in the context of such last-minute proceedings we usually lacked the time to give the method-of-execution claim the necessary consideration. The majority cites a case in which the Seventh Circuit, in the context of the irreparable harm inquiry, seemed to conclude that the inmate had shown only a "mere possibility" of unnecessary pain, see Lambert v. Buss, 498 F.3d 446, 452

12

(7th Cir. 2007), but there the district court had held an evidentiary hearing and made findings concerning the adequacy of the relevant lethal injection protocol (and the Seventh Circuit in fact adopted the decision of the district court as its own). Here, where this factual question received no such thorough treatment in the district court and is unrelated to the merits of this appeal, we should abstain from reaching the issue under the rubric of irreparable harm.

I do agree with the majority that it is unwise to decide, in the context of this stay application, whether § 1983 method-of-execution challenges are subject to a statute of limitations. As the State admits in its briefing, this question is res nova in this circuit, and there simply isn't enough time to do a responsible job on the issue. Furthermore, to the extent that the Supreme Court has discussed the measures available to federal courts to protect the states against dilatory or speculative § 1983 method-of-execution challenges that threaten to disrupt the states' legitimate interest in carrying out executions, it has spoken purely in terms of the requirements for equitable relief. See Hill, 547 U.S. at 583–85; Nelson, 541 U.S. at 649–50; Gomez v. U.S. Dist. Court for the N. Dist. of Cal., 503 U.S. 653, 653–54 (1992). The question whether a statute of limitations should apply to a claim such as this one, where the plaintiff seeks purely injunctive relief against an injury that, although certainly foreseeable, has not yet occurred, is a difficult one that deserves our full and deliberate consideration. Regardless of the fact that it may be framed as a § 1983 action, Bishop's claim seeks an equitable remedy, see Gomez, 503 U.S. at 653–54, and the Court has made clear that "[t]raditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief[,]" Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946). Rather than belabor the point, though, I am content to refer the reader to Judge Myron Thompson's thoughtful discussion of this subject, published at Jones v. Allen, 483 F. Supp. 2d 1142 (M.D. Ala. 2007).

Finally, the district court understandably decided this case on the threshold question of the applicability of a statute of limitations. But in so doing, the court was forced to decide a difficult question of first impression in this circuit and (as best I can tell) in the Supreme Court. Ironically, the case might well have been decided far more easily on the merits of the protocol with the guidance of Baze.

In summary, as the Court has made clear, the decision whether to grant a stay is an equitable one. Because of the State's six-month delay in the district court, Bishop now requires a stay to pursue his claim on appeal. Had it not been for the State's delay, Bishop could have brought his appeal "at such a time as to allow consideration of the merits without requiring entry of a stay." Hill, 547 U.S. at 584 (internal quotation marks and citation omitted). I would grant a stay.