**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUITÎ

DONALD EDWARD BEATY,
            *Plaintiff-Appellant,*

v.

JANICE K. BREWER, Governor of
Arizona; CHARLES RYAN, Director,
Arizona Department of
Corrections; ERNEST TRUJILLO,
Warden, Arizona Department of
Corrections- Eyman; CARSON
MCWILLIAMS, Warden, Arizona
Department of Corrections-
Florence; UNKNOWN PARTIES,
Names as Does 1-50,
            *Defendants-Appellees.*

No. 11-99007

D.C. No.
2:11-cv-01037-
NVW

District of Arizona,
Phoenix

AMENDED
ORDER

Filed May 25, 2011

Before: Sidney R. Thomas, Circuit Judge and
Capital Case Coordinator.

Order;
Concurrence by Judge Tallman;
Dissent by Judge Reinhardt

---

## ORDER

Pursuant to the rules applicable to capital cases in which an execution date has been scheduled, a deadline was established by which any judge could request a vote on whether the panel's order should be reheard en banc. A judge requested a vote on whether to rehear the panel's decision en banc. Judges

7441

Silverman and Ikuta were recused and did not participate in the vote.

A majority of the non-recused active judges did not vote in favor of rehearing en banc. Therefore, the panel's order is the final order of this Court. A copy of the panel order, along with a copy of the district court order to which it refers is attached. Also attached is a dissent from the order denying rehearing en banc and a concurrence in the order.

No further petitions for rehearing or rehearing en banc will be entertained as to the order. The previously issued temporary stay of execution is VACATED.

_____

TALLMAN, Circuit Judge, with whom Chief Judge KOZINSKI, and Judges O'SCANNLAIN, GOULD, CALLAHAN, BEA, and M. SMITH join, concurring in the denial of rehearing en banc:

Judge Reinhardt and those who join him fault this Court for failing to further delay the inevitable. They fault us for not giving Donald Beaty yet another opportunity to delay the just punishment he has been resisting for more than twenty-six years. Admittedly, we, like the district court, are "troubled by the timing of both the Department of Justice's request that [the Arizona Department of Corrections's ("ADC")] sodium thiopental not be used in Plaintiff's execution and the ADC's decision to substitute pentobarbital." Nevertheless, we cannot say that Beaty has not been afforded all the process he is due. Apparently, the Supreme Court agrees. While we voted on whether to rehear this case en banc, the Court denied Beaty's petition for certiorari challenging the State's decision to substitute the drugs. *Beaty v. Brewer*, No. 10-10675 (May 25, 2011).

Judge Reinhardt argues that the "issue before us is not the substantive one of whether substituting drug A for drug B is

'very likely' to cause needless suffering." Not so. Though "the right to procedural due process is 'absolute,' " it is not unmeasured. *Carey v. Piphus*, 435 U.S. 247, 259, 266 (1978). "[I]n deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process . . . .' " *Id.* at 259 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976)).

Had Beaty raised a claim of significant merit, the "risk of error" would have risen and so, too, would the degree of process necessary to satisfy any constitutional concern. However, Beaty did not raise such a claim. To the contrary, Beaty not only failed to provide any factual support for his claim, *cf. Brewer v. Landrigan*, 562 U.S. ___, 131 S. Ct. 445 (2010) ("But speculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.' " (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion))), he failed to suggest any way in which the modified protocol is constitutionally objectionable —or objectionable at all. Regardless, the factual underpinnings of *this claim* were reviewed by the Arizona Supreme Court, the Arizona District Court, the Ninth Circuit, and the Supreme Court itself. This process was constitutionally sufficient.

Both the district court, and our three-judge panel, correctly applied the *Winter* factors in concluding that Beaty had not met his burden of entitlement to injunctive relief. *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365 (2008). That should be the end of the matter. Judge Reinhardt suggests that the timing constraints at issue in this situation should prohibit *Winter*'s application, but he cites nothing to support that novel proposition.

To the contrary, the Supreme Court has instructed that "a plaintiff seeking a preliminary injunction *must* establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374 (emphasis added); *see also Hill v. McDonough*, 547 U.S. 573, 584 (2006) (stating that a "preliminary injunction [for a stay of execution is] *not* granted unless the movant, by a clear showing, carries the burden of persuasion" (emphasis added)). No authority supports Judge Reinhardt's proposition that a prisoner is entitled to a stay in order to get discovery to make out a claim. Not only does *Winter* apply, but we are prohibited from granting relief unless its standards are met.

The Supreme Court has instructed that an injunction is an "extraordinary and drastic remedy," *Munaf v. Green*, 553 U.S. 674, 689 (2008), and that we should be especially cautious in granting injunctive relief where doing so would trample on the state court's judgment, *Baze*, 553 U.S. at 51 n.2. Federal courts are not "boards of inquiry charged with determining 'best practices' for executions." *Id.* at 51. Pentobarbital is a barbiturate commonly used to euthanize terminally ill patients who seek death with dignity in states such as Oregon and Washington. It has also successfully been used for executions in at least four other states. Beaty's sheer speculation that the drug, obtained from a domestic source, will act differently when administered to him by members of a team comprised of "medically trained personnel, such as physicians, physician assistants, nurses, or emergency medical technicians," *Dickens v. Brewer*, 631 F.3d 1139, 1142 (9th Cir. 2011), comes nowhere near meeting his burden of establishing that the drug is " '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers,' " *Baze*, 553 U.S. at 50.

Were we to countenance such hypothetical arguments—and delay solely for the sake of delay—we would simply encourage collateral litigation, embroiling us in scientific controversies beyond our expertise and intruding on legislative and executive prerogative in providing for humane methods of

execution. *See id.* at 51. In the process, we would erect new obstacles preventing states from carrying out legitimate judgments and lose sight of our overarching responsibility to see that justice is done. Denial of en banc review accords the appropriate respect for both the state's legitimate interests and Supreme Court precedent.

---

REINHARDT, Circuit Judge, dissenting from the denial of rehearing en banc, with whom Judges SCHROEDER, PREGERSON, W. FLETCHER, FISHER, PAEZ, and BERZON join:

Rushing to execute Donald Beaty under the circumstances before us is unconscionable. At 4:00 p.m. yesterday, a mere *eighteen hours* before the State was scheduled to execute him, Arizona announced that, due to concerns about the legality of its importation of the drug constitutionally approved for use in its three-drug protocol, it would switch to a new drug that it had never tested and that its executioners had not been trained to use.

The issue before us is not the substantive one of whether substituting drug A for drug B is "very likely" to cause needless suffering. It is the question of procedural due process: whether an individual may be executed pursuant to a protocol substituted for the established means of execution, eighteen hours before the scheduled time of execution and without sufficient opportunity even to present his constitutional objections.

The last-minute action in this case, unlike those previously condemned by the Supreme Court, was taken by the State not the individual about to be executed. Normally, we count against a condemned man seeking a stay "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649 (2004). The State

should be held to a higher standard, not a lower one. The state's last-minute action serves, whether by design or otherwise, to deprive a capital defendant of a fair opportunity to contest the constitutionality of the new method of death to be used. Surely, under these circumstances, the condemned individual is entitled to attempt to determine and present to the Court any objections that he may legitimately raise to the new execution protocol hastily introduced by the State.

Due Process demands more. "The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending . . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). Recently, we observed that "[i]f a court could never look beyond the facial constitutionality of an execution protocol when presented with evidence of improper administration, states could simply adopt constitutionally sufficient protocols similar to Kentucky's and then flout them without fear of repercussion." *Dickens v. Brewer*, 631 F.3d 1139, 1146 (9th Cir. 2011). But now Arizona has upped the stakes: Why bother to properly administer a protocol that a court has held is constitutionally sufficient on its face, when you can just discard that protocol and adopt a new one on the eve of the execution? This way, Arizona has ensured itself a way of using a protocol that a court can "never" look at it in any serious fashion, and it can "flout" the requirement for a constitutionally sufficient protocol "without fear of repercussion."

Beaty has a right to reasonable notice of changes or variations to the mode and manner in which the State plans to carry out his execution in order to review it and ensure that it comports with constitutional requirements. He has a protected interest in knowing and being given an opportunity to be heard about the State's use of pentobarbital in his execution, in contrast to its protocol in past executions. Were it otherwise, the capital defendant's due process right to review such protocols would be meaningless.

The panel denied relief because Beaty failed to demonstrate certain factual matters regarding the new protocol. Yet, we cannot fault him for failing to do so in less than a single day. To require such a showing in the eighteen hours before execution is to deny Beaty due process. The *Winter v. Natural Resources Defense Council*[1] test relied on by the panel cannot apply when a party has not been given an opportunity to make the necessary showing. Here, Beaty was clearly not afforded that opportunity. A stay should be issued in order to allow him to do so.

We err not only by concluding that Beaty will not suffer irreparable injury, a rather odd proposition to say the least, but by failing to recognize that the judicial system itself will as well. This is not the first time there has been a rush to judgment in a capital case, nor the first time there has been an unwillingness to provide due process to a capital defendant. Our conduct in this case, as in others, will certainly weaken even further the diminishing public confidence in the administration of the death penalty.

---

[1]555 U.S. 7 (2008).

DONALD EDWARD BEATY,
          *Plaintiff-Appellant,*

          v.

JANICE K. BREWER, Governor of
Arizona; CHARLES RYAN, Director,
Arizona Department of
Corrections; ERNEST TRUJILLO,
Warden, Arizona Department of
Corrections- Eyman; CARSON
MCWILLIAMS, Warden, Arizona
Department of Corrections-
Florence; UNKNOWN PARTIES,
Names as Does 1-50,
          *Defendants-Appellees.*

No. 11-99007

D.C. No.
2:11-cv-01037-
NVW
District of Arizona,
Phoenix

AMENDED
ORDER

Amended Order Filed May 27, 2011

Before: Sidney R. Thomas, Circuit Judge and
Capital Case Coordinator.

Order;
Concurrence by Chief Judge Kozinski;
Dissent by Judge Reinhardt

   The Amended Order dated May 25, 2011, is amended to
include the attached concurrence by Chief Judge Kozinski and
the additional dissent by Judge Reinhardt.

KOZINSKI, Chief Judge, with whom Judges GOULD, BEA and N.R. SMITH join, concurring in the denial of rehearing en banc:

Because I decided not to delay further the order denying en banc rehearing, I did not file a concurral on the day of the execution. Nevertheless, I believe it's important to lay out an argument that I found very persuasive when voting on the en banc call. By the time Beaty asked for a stay, his claim—that the state violated his constitutional rights by substituting pentobarbital for sodium thiopental as the first drug in its three-drug execution protocol—had already been rejected by two other courts of appeals. The Tenth Circuit approved a protocol virtually identical to Arizona's after allowing the inmate to conduct discovery, submit an expert report and participate in an evidentiary hearing. *See Pavatt* v. *Jones*, 627 F.3d 1336, 1338-40 (10th Cir. 2010). The Eleventh Circuit approved the substitution of pentobarbital for sodium thiopental just last week. *See Powell* v. *Thomas*, No. 11-12238, 2011 WL 1899564, at *1-2 (11th Cir. May 19, 2011) (per curiam). None of Beaty's filings—not his complaint, nor his motion for a TRO before the district court, nor his emergency motion in our court—suggested any way in which the Tenth or Eleventh Circuits' analyses were deficient, or that his case differed materially from those of the inmates there.

While these out-of-circuit cases aren't controlling, I found it significant that the factual and legal issues in Beaty's claim had been fully considered by these courts. Indeed, the inmate in the Eleventh Circuit had about a month's notice of the planned drug substitution, yet the best evidence he could produce was the *same* expert report the Tenth Circuit had rejected. *See Powell*, 2011 WL 1899564, at *1-2. I didn't see how Beaty would come up with better evidence if we granted him a stay, or how he'd clear the Supreme Court's high bar for finding a constitutional violation. *See Baze* v. *Rees*, 553 U.S. 35, 49-50 (2008) (plurality op.). It was therefore appropriate for the district court to rely on the Tenth and Eleventh

Circuits' analyses in denying Beaty a stay of his execution, and for the three-judge panel to rely on the same reasoning. *See* Order Denying Mot. for TRO or Prelim. Inj., *Beaty* v. *Brewer*, No. CIV 11-1037-PHX-NVW, at 7 (D. Ariz. May 25, 2011) (docket entry #9) ("[B]oth the Tenth and Eleventh Circuits have found that use of pentobarbital does not create a substantial risk of serious harm."); *see also Beaty* v. *Brewer*, No. 11-99007, Slip op. 7441, 7453 (9th Cir. May 25, 2011) ("For the reasons expressed by the district court, we conclude that Beaty has failed to satisfy [the standard for a preliminary injunction]."). There was no reason to go en banc and further delay the inevitable.

---

REINHARDT, Circuit Judge, additional dissent from the denial of rehearing en banc:

Chief Judge Kozinski finds it "very persuasive" that two circuits have approved the use of the three-drug protocol that Arizona adopted less than twenty-four hours before the scheduled execution. Again, I find it necessary to express my disagreement.

Conflicts among circuits are common. Indeed, one of the principal reasons for the Supreme Court to hear cases is to resolve the numerous conflicts among circuits. *See* Sup. Ct. R. 10. That other circuits have taken a position on a constitutional question does not relieve us of the responsibility to make a full and independent judgment ourselves. This is the Ninth Circuit, not the Tenth or Eleventh, and our views sometimes differ from those of other circuits. *See, e.g., United States v. Gaudin*, 28 F.3d 943 (9th Cir. 1994) (en banc), *affirmed*, 515 U.S. 506 (1995); *id.* at 955 (Kozinski, J., dissenting) (observing, prior to the affirmance of our decision by the Supreme Court, that "[e]very other circuit to have considered" the question presented has disagreed with the Ninth Circuit).

This is a death penalty, not a slip-and-fall case. We have no greater duty than to decide such cases fairly and properly. Constitutional challenges often turn on their facts. We will never know whether with more time Beaty could have successfully pleaded sufficient facts to satisfy the district court or the three judges of this court to whom the case was assigned that a stay was warranted.

When the State has created a constitutional issue by changing the method of execution only eighteen hours before that ultimate and irreversible act is to take place, we must permit the person to be executed adequate time to prepare his challenge. That did not happen here. As a result, Beaty was deprived of due process, and we as a court were compelled to fall back on inadequate arguments such as those advanced by Chief Judge Kozinski, rather than to make a fully informed and independent decision of our own.

Donald Edward Beaty,
                *Plaintiff-Appellant,*

          v.

Janice K. Brewer, Governor of
Arizona; Charles Ryan, Director,
Arizona Department of
Corrections; Ernest Trujillo,
Warden, Arizona Department of
Corrections- Eyman; Carson
McWilliams, Warden, Arizona
Department of Corrections-
Florence; Unknown Parties,
Names as Does 1-50,
                *Defendants-Appellees.*

No. 11-99007
D.C. No.
2:11-cv-01037-
NVW
District of Arizona,
Phoenix
ORDER

Filed May 25, 2011

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges:

## ORDER

Donald Beaty is scheduled to be executed by the State of
Arizona today, Wednesday, May 25, 2011. Earlier today, the
district court denied Beaty's Motion for Temporary Restrain-
ing Order or Preliminary Injunction. Beaty subsequently filed,
in this court, an Emergency Motion Under Circuit Rule 27-3
for an Injunction.

To obtain preliminary injunctive relief, a plaintiff must
demonstrate (1) that he is likely to succeed on the merits of
such a claim, (2) that he is likely to suffer irreparable harm
in the absence of preliminary relief, (3) that the balance of

equities tips in his favor, and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). We acknowledge that Beaty has a strong interest in being executed in a constitutional manner, but he has not shown that this interest is threatened in this case. For the reasons expressed by the district court, we conclude that Beaty has failed to satisfy this standard.

Accordingly, Beaty's motion is DENIED.

Case 2:11-cv-01037-NVW  Document 9  Filed 05/25/11  Page 1 of 12

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Donald Beaty,

Plaintiff,

vs.

Janice K. Brewer, Governor of Arizona;
Charles L. Ryan, Director, Arizona
Department of Corrections; Ernest
Trujillo, Warden, Arizona Department
of Corrections - Eyman; Carson
McWilliams, Warden, Arizona
Department of Corrections - Florence;
Does 1-50,

Defendants.

No. CIV 11-1037-PHX-NVW

**DEATH PENALTY CASE**

**ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER
OR PRELIMINARY INJUNCTION**

This matter is before the Court for consideration of Plaintiff Donald Edward Beaty's emergency motion for a temporary restraining order or a preliminary injunction. (Doc. 1.) Plaintiff Beaty, an Arizona inmate under sentence of death, is scheduled to be executed today, May 25, 2011, at 10:00 a.m. Yesterday, May 24, 2011, at 9:05 p.m., he filed in this Court the instant motion.[1] Respondents filed a response at 1:45 a.m. this morning, and

---

[1] Plaintiff also filed a motion in the Arizona Supreme Court requesting that court to vacate the warrant of execution or grant a stay. Subsequently, at approximately 10:45 p.m., the Arizona Supreme Court granted a temporary stay of execution and set Plaintiff's case for oral argument at 9:30 a.m. today. Pursuant to Rule 31.17(c)(3) of the Arizona Rules of Criminal Procedure, a warrant of execution is valid for twenty-four hours beginning at an hour designated by the director of the state department of corrections. In this case, that hour

Case 2:11-cv-01037-NVW   Document 9   Filed 05/25/11   Page 2 of 12

several hours later Plaintiff filed a reply as well as a complaint pursuant to 42 U.S.C. § 1983 and an application to proceed *in forma pauperis*. (Docs. 3-7.) The complaint alleges that the manner and means by which the Arizona Department of Corrections (ADC) intends to execute him will violate his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. The Court has considered the pleadings and Plaintiff's complaint. For the reasons that follow, the Court denies Plaintiff's motion for a temporary stay of execution.

**BACKGROUND**

The facts underlying Plaintiff's 1985 conviction and death sentence for the murder of 13-year-old Christy Ann Fornoff are detailed in the Arizona Supreme Court's decision on direct appeal and will not be repeated here. *See State v. Beaty*, 158 Ariz. 232, 236, 762 P.2d 519, 524 (1988). Because Plaintiff committed his crime before November 23, 1992, under Arizona law he has the choice to be executed by either lethal injection or lethal gas. *See* A.R.S. § 13-757(B). According to his complaint, Plaintiff declined to choose. Consequently, ADC must use lethal injection to execute him. *Id.*

In 2007, Plaintiff and several other Arizona condemned inmates filed a § 1983 complaint challenging numerous aspects of Arizona's then-in-effect lethal injection protocol. That protocol—which requires sequential administration of sodium thiopental, pancuronium bromide, and potassium chloride for execution by lethal injection—was based on Department Order 710, titled "Preparation and Administration of Chemicals," dated November 1, 2007, and as modified by an exhibit submitted by the parties as part of a joint report to the Court.

began at 10:00 a.m. this morning. Thus, if the Arizona Supreme Court ultimately denies Plaintiff's motion at some point today, this Court assumes Defendants would not be prohibited from rescheduling Plaintiff's execution prior to 10:00 a.m. tomorrow, May 26. Accordingly, and in the interests of expediency, this Court proceeds to address Petitioner's motion for injunctive relief, despite the temporary stay currently in effect. The Court further notes that the parallel motion before the Arizona Supreme Court may draw upon that court's plenary and supervisory power. The motion before this court may be granted only upon a showing of the federal substantive and procedural requirements discussed in this order.

- 2 -

*See Dickens v. Brewer*, No. CIV-07-1770-PHX-NVW, 2009 WL 1904294 at *1 & n.2 (D. Ariz. Jul. 1, 2009) (unpublished order). On July 1, 2009, this Court granted summary judgment in favor of Defendants, concluding that Arizona's three-drug protocol was "substantially similar" to that approved by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), and thus did not subject inmates to a substantial risk of serious harm in violation of the Eighth Amendment. *Id.* On February 9, 2011, the Ninth Circuit Court of Appeals affirmed. *Dickens v. Brewer*, 631 F.3d 1139 (9th Cir. 2011). The appellate court's mandate issued on April 18, 2011.

At approximately 4:00 p.m. on Tuesday, May 24, 2011, less than 24 hours before Plaintiff's scheduled execution, ADC filed in Plaintiff's case at the Arizona Supreme Court a "Notice of Substitution of Drug." (Doc. 2, Ex. G.) The notice states that ADC intends to substitute pentobarbital for sodium thiopental in carrying out Plaintiff's execution but that Arizona's lethal injection protocol will otherwise remain the same as used in prior executions. (*Id.* at 1.) The notice further states that Arizona's protocol authorizes ADC's Director to make such a change and that the drug was obtained domestically. (*Id.*) Finally the notice, and a subsequently filed errata to the notice, indicates that on this same day (May 24), a United States Associate Deputy Attorney General contacted the Arizona Attorney General's Office requesting that the sodium thiopental ADC imported from a foreign source not be used in Plaintiff's May 25 execution because the Drug Enforcement Administration believes ADC failed to fill out one of the forms necessary for importation of the drug. (*Id.* at 2; Doc. 2, Ex. H.)

## DISCUSSION

In his § 1983 complaint, Plaintiff alleges that ADC's last-minute substitution of pentobarbital violates his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment.

Plaintiff has moved for a temporary restraining order or a preliminary injunction to enjoin his execution and to allow for litigation of these claims. The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary

Case 2:11-cv-01037-NVW Document 9 Filed 05/25/11 Page 4 of 12

injunction. To be entitled to injunctive relief, a movant must demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374, 376 (2008); *National Meat Ass'n v. Brown*, 599 F.3d 1093, 1097 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). The burden of persuasion is on the movant, who must make "a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

In the context of a capital case, the Supreme Court has emphasized that these principles apply when a condemned prisoner asks a federal court to enjoin his impending execution because "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). Rather, "a stay of execution is an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* at 584. In addition, "[a] court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Beardslee*, 395 F.3d at 1068 (quoting *Gomez v. United States District Court*, 503 U.S. 653, 654 (1991)). Thus, courts "must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)).

I.    **Likelihood of Success**

In his motion for injunctive relief, Plaintiff asserts that a last-minute drug substitution will make it impossible for ADC to comply with the training requirement of Arizona's lethal injection protocol. Without the "safeguard of training," Plaintiff argues his right to be free from cruel and unusual punishment under the Eighth Amendment will be violated because there is a substantial risk the anesthetic drug will not be properly administered. Plaintiff further asserts he has a right to reasonable notice of changes to Arizona's lethal injection

- 4 -

protocol so that he can review and attempt to challenge them. Here, according to Plaintiff, ADC's failure to timely notify him of the drug substitution violates his right to due process under the Fourteenth Amendment because he lacks sufficient time to review the protocol change, as well as his medical records, to determine whether there are any constitutional concerns with the new drug.

### A.     Alleged Eighth Amendment Violation

The Eighth Amendment "prohibits punishments that involve the unnecessary and wanton inflictions of pain, or that are inconsistent with evolving standards of decency that mark the progress of a maturing society." *Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir. 2004). That prohibition necessarily applies to the punishment of death, precluding executions that "involve torture or a lingering death, or do not accord with the dignity of man." *Beardslee*, 395 F.3d at 1070. A violation of the Eighth Amendment can be established by demonstrating there is a risk of harm that is "*sure or very likely* to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 34 (1993). In other words, there must be a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

In *Baze v. Rees*, the Supreme Court held that Kentucky's method of execution by lethal injection was consistent with the Eighth Amendment. The decision encompassed seven separate opinions involving three blocks of Justices. In *Ventura v. State*, 2 So.3d 194, 200 (Fla. 2009), the Florida Supreme Court observed that the *Baze* plurality:

> adopted a version of the substantial-risk standard, while Justice Breyer, concurring in the judgment, and Justices Ginsburg and Souter, dissenting, adopted a version of the unnecessary-risk standard. In contrast, Justices Thomas and Scalia renounced any risk-based standard in favor of a rule of law that would uphold any method of execution which does not involve the *purposeful* infliction of "pain and suffering beyond that necessary to cause death." Justice Stevens did not provide a separate standard but, instead, expressed general disagreement with (1) the death penalty based upon his long experience with these cases and the purported erosion of the penalty's theoretical underpinnings (deterrence, incapacitation, and retribution), and (2) the allegedly unnecessary use of the paralytic drug pancuronium bromide.

*Id.* at 199-200 (citations and footnotes omitted). In response to Justice Stevens's suggestion that the plurality opinion leaves the disposition of other cases uncertain, Chief Justice

Case 2:11-cv-01037-NVW   Document 9   Filed 05/25/11   Page 6 of 12

Roberts wrote:

> [T]he standard we set forth here resolves more challenges than [Justice Stevens] acknowledges. *A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain.* He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol similar to the protocol we uphold today would not create a risk that meets this standard.

*Baze,* 553 U.S. at 61 (emphasis added).

The ADC's Department Order 710 "establishes procedures for planning and carrying out the execution of a person convicted of a capital offense and sentenced to death." Department Order 710 provides:

> These procedures shall be followed as written unless deviation or adjustment is required, as determined by the Arizona Department of Corrections (Department). This Department Order outlines internal procedures and does not create any legally enforceable rights or obligations.

As currently written, the protocol requires sequential administration of: (1) sodium thiopental, a ultra fast-acting barbiturate that induces unconsciousness; (2) pancuronium bromide, a paralytic neuromuscular blocking agent that prevents any voluntary muscle contraction; and (3) potassium chloride, which causes skeletal muscle paralysis and cardiac arrest. "It is uncontested that, failing a proper dose of sodium thiopental that would render [a] prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride." *Baze,* 553 U.S. at 53.

Arizona's written protocol notwithstanding, ADC has notified Plaintiff, less than 24 hours prior to his scheduled execution, that it intends to substitute pentobarbital for sodium thiopental in its lethal injection protocol. Plaintiff argues that this last-minute substitution means the State cannot comply with the training requirements of its protocol and thus there is a substantial risk of serious harm that the anesthetic drug will not be properly administered if his execution proceeds as scheduled. The protocol's training requirements mandate that all execution medical team members understand *and practice* the lethal injection procedures, including inserting the IV catheters, ensuring the IV line is functioning properly throughout

- 6 -

the procedure, mixing the chemicals, preparing the syringes, monitoring the inmate's level of consciousness, and supervising the administration of the chemicals.

In their response, Defendants assert that the task of administering pentobarbital in place of sodium thiopental constitutes only a "minor variation" in the protocol that does not require retraining of the execution medical team. Defendants further cite cases from Oklahoma and Alabama that have rejected Eighth Amendment challenges to the substitution of pentobarbital for sodium thiopental. *See Powell v. Thomas*, No. 11-12238, 2011 WL 1899564 (11th Cir.), *cert. denied*, No. 10-10589, 2011 WL 1894851 (U.S. May 19, 2011); *Pavatt v. Jones*, 627 F.3d 1336 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 974 (2011). In reply, Plaintiff cites the deposition of Defendants' expert in *Dickens v. Brewer*, Dr. Mark Dershwitz, who explained that preparation of pentobarbital would be more complicated than that of sodium thiopental because it comes in tiny syringes and approximately 50 of these would have to be mixed to constitute the five grams required by the protocol. (Deposition of Mark Dershwitz, M.D., Dec. 9, 2008, 173:5-8, *Dickens v. Brewer*, No. CIV-07-1770-PHX-NVW, Doc. 109-1 at 45.)

The Court is sympathetic to Plaintiff's arguments and is troubled by the timing of both the Department of Justice's request that ADC's sodium thiopental not be used in Plaintiff's execution and the ADC's decision to substitute pentobarbital. However, to show a likelihood of success on the merits of his Eighth Amendment claim, Plaintiff must demonstrate that the substitution of pentobarbital creates a "demonstrated risk of severe pain." *Baze*, 553 U.S. at 61. This he has not done.

First, Plaintiff has not alleged that use of pentobarbital in place of sodium thiopental will cause him serious pain or fail to sufficiently anesthetize him. He does not dispute Respondents' assertion that pentobarbital is, like sodium thiopental, a fast-acting barbiturate. Indeed, both the Tenth and Eleventh Circuits have found that use of pentobarbital does not create a substantial risk of serious harm. *See Powell*, 2011 WL 1899564, at *2; *Pavatt*, 627 F.3d at 1340. In addition, pentobarbital has been used either singularly or as a substitute for

Case 2:11-cv-01037-NVW   Document 9   Filed 05/25/11   Page 8 of 12

sodium thiopental in executions in Mississippi, Ohio, South Carolina, and Texas.[2]

Second, although Plaintiff correctly notes that ADC's medical execution team did not learn until yesterday of the drug substitution and thus likely did not practice preparing syringes with pentobarbital, this fact alone in insufficient to make a "clear showing" of likely success on the merits. This is because Arizona's protocol has significant safeguards in place to ensure that a prisoner is fully anesthetized prior to administration of pancuronium bromide and potassium chloride.

As noted by this Court in *Dickens*, although electronic monitors may be used to measure brain activity, physical examination such as stroking a patient's eyelashes to look for reflex and monitoring his breathing pattern is as good or better for assessing the depth of anesthesia. 2009 WL 1904294, at *12. To this end, the Arizona protocol:

> requires that a microphone "be affixed to the inmate's shirt to enable the Medical Team and Special Operations Team Leader to verbally communicate directly with the inmate and hear any utterances or noises made by the inmate throughout the procedure." It requires that the inmate "be positioned to enable the Medical Team and Special Operations Team Leader to directly observe the inmate and to monitor the inmate's face with the aid of a high resolution color NTSC CCD camera with 10x Optical zoom lens with pan tilt capability and a 19-inch resolution color monitor." It requires the Medical Team to "continually monitor the inmate's level of consciousness and electrocardiograph readings, maintaining constant observation of the inmate utilizing direct observation, audio equipment, camera and monitor as well as any other medically approved method(s) deemed necessary by the Medical Team." It requires the warden to "physically remain in the room with the inmate throughout the administration of the chemicals in a position sufficient to clearly observe the inmate and the primary and backup IV sites for any potential problems." Further, after administration of the sodium thiopental and heparin/saline flush, the Medical Team must "confirm the inmate is

[2] *See Mississippi Executes Man with New Lethal Injection Cocktail*, USA Today (May 10, 2011 9:14 PM), http://www.usatoday.com/news/nation/2011-05-10-mississippi-execution-drug_n.htm; *Jeffrey Motts becomes 1st S.C. Inmate Executed with New Lethal Mix*, Greenville Online.com (May 6, 2011 2:00 AM), http://www.greenvilleonline.com/article/20110506/NEWS/305070001/Jeffrey-Motts-bec omes-1st-S-C-inmate-executed-with-new-lethal-mix; *Texas Executes First Inmate Using Drug Used on Animals*, Reuters (May 4, 2011 9:18 AM), http://www.reuters.com/article/2011/05/04/us-texas-execution-idUSTRE74300F20110504; *Ohio Executes Inmate with New Death-Penalty Drug*, Washington Times (Mar. 10, 2011 12:56 PM), http://www.washingtontimes.com/news/2011/mar/10/ohio-executes-inmate-new-death-penalty-drug/.

- 8 -

Case 2:11-cv-01037-NVW   Document 9   Filed 05/25/11   Page 9 of 12

unconscious by sight and sound, utilizing the audio equipment, camera and monitor," and a Medical Team member must "enter into the room where the inmate is located to physically confirm the inmate is unconscious, and that the catheter and lines are affixed and functioning properly, using methods deemed medically necessary." Although the Arizona Protocol does not define "methods deemed medically necessary," it is likely that Medical Team members, who must be medically trained, would be able to assess consciousness by telling the patient to respond and, upon receiving no response, be able to look for a simple reflex response to a tactile stimulus.

*Id.* at *21. If it appears that a prisoner is not fully anesthetized, the protocol prohibits the administration of any further drugs. Given these safeguards, there is very little risk that Plaintiff would suffer unnecessary pain in the event execution team members fail to properly prepare the pentobarbital syringes. *See Cook v. Brewer*, 637 F.3d 1002, 1007-08 (9th Cir. 2011), *cert. denied*, No. 10-9824, 2011 WL 1258192 (U.S. May 16, 2011) (rejecting claim of substantial risk of pain from administration of allegedly incorrect, diluted or adulterated anesthetic in light of consciousness check prior to administration of other two drugs); *see also Dickens*, 631 F.3d at 1141 (stating that Arizona protocol's safeguards are adequate under *Baze* standard).

Finally, in concluding that Plaintiff has failed to establish a likelihood of success on the merits, the Court observes that any risk of mistake from the execution medical team's lack of practice using pentobarbital is speculative and fails to rise to the level required to demonstrate a substantial risk of serious harm under Eighth Amendment jurisprudence. *See Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994) ("The risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review."). Furthermore, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Baze*, 553 U.S. at 50 (plurality opinion) (quoting *Farmer*, 511 U.S. at 842).

**B.      Alleged Due Process Violation**

To establish a procedural due process violation, Plaintiff must show that (1) he had a property or liberty interest that was interfered with by Defendants, and (2) Defendants failed to use constitutionally sufficient procedures in depriving Plaintiff of that right.

- 9 -

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of the States.'" *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

Plaintiff has not alleged that Arizona law creates an enforceable liberty interest. Indeed, as the Court explained in *Dickens*, Arizona's lethal injection protocol is not statutory—it is issued by ADC and sets out technical procedures for carrying out lethal injection. Rules made by ADC are exempted from the general rule-making provisions of the Administrative Procedures Act. *See* A.R.S. § 41-1005(A)(23).

In *Dickens*, this Court observed that "[t]here appears to be no dispute that each Plaintiff is entitled to notice of any amendment to the Arizona Protocol if the amendment will be in effect for the Plaintiff's execution." 2009 WL 1904294, at * 23 n.9. For this proposition, the Court cited *Oken v. Sizer*, 321 F.Supp. 2d 658, 664 (D. Md. 2004), in which that court stated: "Fundamental fairness, if not due process, requires that the execution protocol that will regulate an inmate's death be forwarded to him in prompt and timely fashion." In *Oken*, the court stayed the plaintiff's execution and required the defendants to produce the state's recently-amended execution protocol, explaining that "[d]ue process requires . . . an opportunity to receive notice of how one's rights will be affected and opportunity to respond and be heard." *Id.* at 665.

In his motion for injunctive relief, Plaintiff relies on *Oken* in support of his assertion that he has a right to reasonable notice of protocol changes so that he can ensure such changes comport with constitutional requirements. However, this Court cannot rely on one district court's unsupported assertion that capital plaintiffs have such a due process right, especially in view of the fact that the United States Supreme Court vacated the stay of execution granted by the district court in *Oken*. *See Sizer v. Oken*, 542 U.S. 916 (2004).

Moreover, other than the district court order in *Oken*, Plaintiff cites no authority to support his allegation that the Due Process Clause provides a right to review protocol changes and attempt to challenge them. Other courts to address this issue have found no such

- 10 -

authority. *See Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting lack of authority indicating due process right to probe into backgrounds of execution personnel); *Powell v. Thomas*, No. 2:11-CV-376-WKW, 2011 WL 1843616 at *10 (M.D. Ala. May 16, 2011) (finding no authority for proposition that condemned inmate has due process right to receive notice and an opportunity to be heard regarding substitution of pentobarbital).

Given the lack of authority to support Plaintiff's procedural due process violation, the Court finds that he has failed to establish a likelihood of success on the merits of that claim to notice. Moreover, even assuming Plaintiff is entitled to some measure of notice of the drug substitution, rights to notice are in service of protecting substantive rights. Plaintiff has not shown any credible prospect that the notice 18 hours prior to his scheduled execution may lead to cruel and unusual punishment. There is no prospect that pentobarbital in general is an insufficient anesthetic, and Plaintiff does not contend it is. This case comes down to an attempted constitutionalization of the planned regimen for practice by staff, with nothing but guessing that staff lack the judgment and skill to administer the pentobarbital in this case. The nearly failsafe protections in the protocol against proceeding without full anesthetization, as summarized in this order, make both the short notice and the speculations about staff training meaningless as to protecting Plaintiff from pain. The Court concludes that any challenge to the use of pentobarbital would likely fail to establish a substantial risk of unnecessary pain.

**II.    Irreparable Harm**

The Court also concludes that Plaintiff has not shown that he is likely to suffer irreparable harm in the absence of a stay. Plaintiff asserts that he is at risk of suffering pain if the pentobarbital does not adequately anesthetize him. However, as already discussed, the mere fact that medical team members have not practiced using pentobarbital fails to establish a substantial risk of harm. *See Lambert v. Buss*, 498 F.3d 446, 452 (7th Cir. 2007) (finding no irreparable harm from "mere possibility" unforeseen complication will cause unnecessary pain). Moreover, the risk of harm is substantially mitigated by the safeguards outlined above that will ensure Plaintiff is fully anesthetized before the second and third drugs are

- 11 -

Case 2:11-cv-01037-NVW   Document 9   Filed 05/25/11   Page 12 of 12

administered.

**III.    Balance of Equities & Public Interest**

Plaintiff murdered Christy Ann Fornoff over twenty-five years ago.   In *Hill v. McDonough*, the Supreme Court recognized the "important interest in the timely enforcement of a sentence" and cautioned that federal courts "can and should protect States from dilatory or speculative suits."  547 U.S. at 584-85.  Given the State's "strong interest in enforcing its criminal judgments without undue interference from the federal courts," and because "the victims of crime have an important interest in the timely enforcement of a sentence," the Court concludes that the balance of equities favors Defendants and that a stay of execution to resolve Plaintiff's speculative allegations is not in the public interest.  *Id.* at 584.

**CONCLUSION**

Plaintiff has not demonstrated entitlement to injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 1) is **DENIED**.

DATED this 25th day of May, 2011.

_____
Neil V. Wake
United States District Judge

- 12 -