**Christopher SEPULVADO, Intervenor Plaintiff–Appellee,**

**v.**

**Bobby JINDAL, Governor of Louisiana; James M. LeBlanc, Secretary, Department of Public Safety and Corrections; Burl Cain, Warden, Louisiana State Penitentiary; Angie Norwood,**

Warden, Death Row; Louisiana Department of Public Safety and Corrections; John Does, Unknown Executioners, Defendants–Appellants.

No. 13–70007.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 2013.

Gary Patrick Clements, Counsel, Kathleen Ann Kelly, Esq., Capital Post—Conviction Project of Louisiana, New Orleans, LA, for Intervenor Plaintiff–Appellee.

Edmond Wade Shows, Shows, Cali, Berthelot & Walsh, L.L.P., Baton Rouge, LA, for Intervenor Plaintiff–Appellee and Defendant–Appellant.

Jacqueline Bordelon Wilson, Shows, Cali, Berthelot & Walsh, L.L.P., Baton Rouge, LA, for Defendants–Appellants.

Before STEWART, Chief Judge, SMITH and SOUTHWICK, Circuit Judges.

PER CURIAM:

*ON PETITION FOR PANEL REHEARING AND PETITION FOR REHEARING EN BANC*

The petition for panel rehearing is DENIED. The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R.APP. P. 35 and 5TH CIR. R. .35), the petition for rehearing en banc is DENIED.

In the en banc poll, 4 judges voted in favor of rehearing (Judges King, Dennis, Prado, and Graves), and 11 judges voted against rehearing (Chief Judge Stewart and Judges Jolly, Davis, Jones, Smith, Clement, Owen, Elrod, South wick, Haynes, and Higginson).

JAMES L. DENNIS, Circuit Judge, joined by CAROLYN DINEEN KING and JAMES E. GRAVES, JR., Circuit Judges, dissenting from the denial of rehearing en banc:

Louisiana, by statute, requires that death sentence executions be carried out by lethal injection. LA.REV.STAT. § 15:569(B). Prior to 2010, the State of Louisiana, pursuant to a Louisiana Department of Corrections directive, used a three-drug protocol to execute inmates via lethal injection: a combination of sodium thiopental (a barbiturate and anesthetic), pancuronium bromide (a paralyzing agent that, *inter alia,* induces suffocation), and potassium chloride (a substance that induces a heart attack).[1] In 2010, due to a nationwide shortage of sodium thiopental, Louisiana, having exhausted its unexpired supply of that drug, repealed or rescinded its regulations governing lethal-injection protocols and procedures altogether and did not publicly announce what drug or combination of drugs it would use in place of sodium thiopental.

On January 23, 2013, Sepulvado, a Louisiana death row prisoner, intervened in this § 1983 suit seeking to obtain notice from the State of what drug or combination of drugs will be used to execute him in his execution on February 13, 2013, and an opportunity to consider whether to challenge the constitutionality of the drug protocol that the State plans to use in his

---

1. Without the first drug, injection of the second two drugs would be extremely painful.

*See, e.g., Baze v. Rees,* 553 U.S. 35, 49, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).

execution.[2] The State repeatedly refused to furnish Sepulvado with this notice and adamantly insisted before the district court that it is under no obligation to officially release the details of the execution protocol.

On February 7, 2013, the district court granted Sepulvado a preliminary injunction that required the State to turn over its lethal-injection protocols and stayed Sepulvado's execution until further order of the court. *Hoffman v. Jindal*, No. 12–CV–796–JJB, 2013 WL 489809 (M.D.La. Feb. 7, 2013). If the district court had not stayed Sepulvado's execution scheduled for February 13, 2013, Sepulvado likely would have been the first person to be put to death without definite official notice as to what drug or combination of drugs would be used to execute him and without an opportunity to object and be heard at a meaningful time and in a meaningful manner.

The State appealed the district court's injunction and stay order. Subsequently, after regular appellate proceedings, a panel of this court, on August 30, 2013, reversed the district court's judgment and held that a death row prisoner has no liberty or procedural due process interest in receiving notice of what drug or combination of drugs and methods will be used to execute him, and, if appropriate, in having an opportunity to object to those drugs and methods. *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir.2013).

However, prior to the panel's decision on August 30, 2013, the State, on June 17, 2013, disclosed a new lethal-injection protocol to Sepulvado and the district court, stating that the State will use a single dose of pentobarbital to execute Sepulvado and describing in some detail the methods by which the execution will take place. The State's compliance with the district court's injunction order thus rendered moot the constitutional procedural due process question raised by the State's appeal.

In my view, the panel opinion is not only invalid because it was based on an erroneous application of procedural due process—the panel also contravened the Supreme Court's prior admonishment to us in *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), that we must refrain from issuing advisory opinions on preliminary injunctions that have already been carried out. Accordingly, I respectfully dissent from the denial of rehearing *en banc*.

## I.

It is axiomatic that this Court has an obligation to satisfy itself of its own subject-matter jurisdiction. *E.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Article III of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies." U.S. CONST. art. III, § 2. With certain exceptions not applicable here, federal courts must decline to exercise jurisdiction over a case that has become moot. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

2. Between 2008 and December of 2012, a Louisiana state court had stayed Sepulvado's execution due to unrelated litigation regarding the State's lethal-injection protocol. The stay was lifted on December 12, 2012, and shortly thereafter, Sepulvado filed two state public records requests for the current injection protocol, both of which were denied before he moved to intervene in this § 1983 suit.

outcome. No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.,* —— U.S. ——, 133 S.Ct. 721, 726–27, 184 L.Ed.2d 553 (2013) (citations and quotation marks omitted); *see also, e.g., Friends of the Earth,* 528 U.S. at 180, 120 S.Ct. 693 ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins ... [the Court's] mootness jurisprudence."). Federal courts of appeals must decline to review a preliminary injunction on the merits if, during the pendency of the appeal, the defendant has complied with the terms of the injunction. *Camenisch,* 451 U.S. at 396, 398, 101 S.Ct. 1830.

In *Camenisch,* the Supreme Court granted certiorari and vacated an opinion of this Court as moot under circumstances similar to those presented in this case. *See id.* There, the district court granted a preliminary injunction that required the University of Texas to pay for an interpreter for a deaf graduate student under the Rehabilitation Act of 1973. *Id.* at 392–93, 101 S.Ct. 1830. A panel of this Court affirmed the district court's order in relevant part. *Id.* at 393, 101 S.Ct. 1830. However, by the time this Court acted, the University had obeyed the district court's preliminary injunction. *Id.* Nevertheless, we concluded that the case was not moot because, we reasoned, one justiciable issue remained live in the case—namely, which

party would bear the responsibility of paying for the interpreter. *Id.* The Supreme Court vacated our opinion as moot, admonishing that "the terms of the injunction ... ha[d] been fully and irrevocably carried out" by the time we issued our opinion, and that, because the only issue remaining must be resolved after a full trial on the merits, "[u]ntil such a trial has taken place, it [was] inappropriate for th[e] Court to intimate any view on the merits of the lawsuit." *Id.* at 398, 101 S.Ct. 1830; *see also, e.g., Sale v. Haitian Ctrs. Council, Inc.,* 509 U.S. 918, 113 S.Ct. 3028, 125 L.Ed.2d 716 (1993) (summarily vacating as moot court of appeals decision affirming preliminary injunction) (citing *Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, and *United States v. Munsingwear,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950)).

The panel fails to acknowledge that this case is controlled by *Camenisch.* The district court entered a preliminary injunction before any proceedings had taken place on the merits, and the State complied fully with the terms of the preliminary injunction—by turning over its revised lethal-injection protocol to Sepulvado—before the panel of this Court issued its decision. This appeal commenced on February 7, 2013, when the State filed its notice of appeal. During the pendency of this appeal, on June 6, 2013, a magistrate judge ordered that the State turn over its lethal-injection protocols and denied the State a protective order with respect to the protocols. *See Hoffman v. Jindal,* No. 3:12–cv–00796–JJB–SCR (Doc. No. 62).[3] The

---

**3.** "We may take judicial notice of another court's judicial action.... [T]he fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.,* 390 F.3d 400, 408 n. 7 (5th Cir.2004); *see, e.g.,* CHARLES A. WRIGHT & ARTHUR R. MILLER, 21B FED. PRAC. & PROC. § 5106.4 (2d ed. &

Supp.2012) (courts and commentators "generally agree that courts can take judicial notice of court records under Rule 201(b)(2)''); *see generally* FED.R.EVID. 201(b) (providing that this court "may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily

State complied with the discovery order, and on June 17, 2013, the State turned over its revised lethal-injection protocol. *See id.* (Doc. No. 67, ¶ 31, at 9–10). The new protocol describes the lethal-injection methodology and provides that pentobarbital alone will be used. *See id.* On August 16, 2013, the plaintiffs filed an amended complaint citing and summarizing the State's procedures pursuant to the lethal-injection protocol that the State turned over on June 17, 2013. *Id.* (Doc. No. 67, ¶ 31, at 9). The panel filed its opinion addressing the State's ostensible refusal to hand over the protocol on August 30, 2013, without mentioning that the State had already turned over the new protocol.

Thus, the question that formed the basis of the panel's decision—whether Sepulvado had a liberty interest, giving rise to the protections of procedural due process, to have notice of what drug or combination of drugs the State would use to execute him—was mooted before the panel's opinion issued, in violation of *Camenisch.* Based on the district court's written order granting Sepulvado a preliminary injunction and stay of execution, and what was discussed at the hearing on Sepulvado's motions on February 7, 2013, it is clear that the district court's preliminary injunction was based solely on the fact that Louisiana had maintained complete secrecy as to its lethal-injection protocol up to that point and likely would not have disclosed any protocol before Sepulvado's execution, which was then scheduled for February 13, 2013.[4] After the State complied with the district court's order, the only question presented to this Court—whether Sepulvado was entitled to notice of what drug or combination of drugs would be used to execute him—became irrevocably

moot. Sepulvado received all the notice to which he claimed he was entitled in his motion for a preliminary injunction.

The panel was without jurisdiction to rule on the procedural due process question presented. Any remaining due process or Eighth Amendment issues should be resolved by a trial on the merits or after some further order of the district court, not on appeal of the district court's moot injunction. *See Camenisch,* 451 U.S. at 396, 398, 101 S.Ct. 1830 (holding appeal from order granting preliminary injunction was moot because "the terms of the injunction . . . ha[d] been fully and irrevocably carried out" by the time we issued our opinion, and that, because the only issue remaining must be resolved after a full trial, it was "inappropriate for th[e] Court to intimate any view on the merits of the lawsuit").

Accordingly, we should have vacated the panel opinion and the district court's orders and remanded for further proceedings including, if necessary, a trial on the merits.

## II.

By reaching the merits of a constitutional question that had become moot by the time the panel purported to answer it, the panel overstepped its authority and rendered an improper advisory opinion. The panel's overreaching is especially improper given the importance of the constitutional question presented. For the reasons that follow, the panel's holding was also wrong on the merits.

In holding that condemned inmates have no liberty interest whatsoever in receiving notice and opportunity to be heard with

determined from sources whose accuracy cannot reasonably be questioned").

4. At the hearing, the State only orally disclosed what drugs would be used at the scheduled execution.

respect to what substance or substances will be used to execute them, the panel misconstrued the nature of the liberty interest asserted, came to a holding that is much broader than necessary to resolve the case before it, and created misguided precedent that, if followed, will severely curtail the protections of procedural due process. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The touchstone of procedural due process is "the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Id.* (quoting *Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)) (alteration omitted); *see also id.* at 333, 96 S.Ct. 893 ("The right to be heard before being condemned to suffer grievous loss of any kind … is a principle basic to our society.") (citation and quotation marks omitted). The notice must be of such nature as reasonably to convey the required information, and "must be granted at a meaningful time and in a meaningful manner." *E.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 533, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)) (quotation marks omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (citing, *inter alia, Vitek v. Jones*, 445 U.S. 480, 493–94, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution)), "or it may arise from an expectation or interest created by state laws or policies," *id.* (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 556–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

Sepulvado has a cognizable liberty interest in obtaining definite, official notice as to what drug or combination of drugs will be used to execute him, and he is entitled to due process before he is fatally and finally deprived of that interest. Without such notice, Sepulvado would be subject to a death warrant and execution by lethal injection by a substance or combination of substances that might cause unnecessary pain and suffering during the execution in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause—an inalterable, grievous loss entitling him, at a minimum, to notice and an opportunity to object. *See Wilkinson*, 545 U.S. at 221, 125 S.Ct. 2384; *Mathews*, 424 U.S. at 348–49, 96 S.Ct. 893; *McGrath*, 341 U.S. at 168, 71 S.Ct. 624 (Frankfurter, J., concurring). If a State does not officially release the details of its execution protocol, a court would have no way of verifying whether the State planned to use pentobarbital or another substance, such as expired or contaminated sodium thiopental, or an entirely different chemical whose properties could very well cause an unconstitutional degree of pain and suffering. If Sepulvado were not given such notice before his execution takes place, there is absolutely no possibility of a post-deprivation hearing or any opportunity to be heard "at a meaningful time and in a meaningful manner." *Hamdi*, 542 U.S. at 533, 124 S.Ct. 2633 (citations and quotation marks omitted).

In sum, Sepulvado has demonstrated that he has a strong liberty interest in receiving definite, official notice of the drug or combination of drugs that will be used to execute him. This conclusion is

consistent with the general principles that changing and keeping secret the details of a pending execution offends the basic constitutional principle of fair notice,[5] and that criminal proceedings of all kinds must be subject to public scrutiny.[6]

In ruling against Sepulvado, the panel fundamentally misconstrued the nature of the liberty interest that Sepulvado asserts. Sepulvado does not assert that he has a liberty interest in being free from uncertainty or anxiety, *cf. Sepulvado,* 729 F.3d at 419–20—rather, he has a liberty interest in having notice of what drugs will be used to execute him and to an opportunity to object and to have some kind of hearing.

The panel relies on cases that are materially distinguishable from this case in that in none of the cited authorities did the State outright refuse to give the prisoner notice of the drugs it planned to use in the execution. *Cf. id.* at 418–19 (citing *Powell v. Thomas,* 641 F.3d 1255, 1258 (11th Cir. 2011) (finding no constitutional violation where the state's notice of its "execution protocol w[as] accurate and adequately informed [the condemned inmate] of the process that would be used"), and *Beaty v. Brewer,* 791 F.Supp.2d 678, 682–83 (D.Ariz.2011) (last-minute notice to condemned inmate of drug substitution), *aff'd,* 649 F.3d 1071, 1072 (9th Cir.2011) (per curiam)).[7] Moreover, the panel erred

5. *See In re Medley,* 134 U.S. 160, 171–73, 10 S.Ct. 384, 33 L.Ed. 835 (1890) (holding that keeping secret the details of a State's pending execution, and changing the methods of carrying out a death sentence to the prisoner's disadvantage after the crime was committed, offend the basic constitutional principle of fair notice and the guarantee against *ex post facto* laws, citing the "immense mental anxiety" occasioned by the secrecy of the details of the execution, which amounted to an additional punishment "of the most important and painful character"); *see also Weaver v. Graham,* 450 U.S. 24, 32 n. 17, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (suggesting that a post-offense change in a state's execution protocols would violate the *ex post facto* prohibition unless the change in execution method is more humane than the prior method of execution) (citing *Malloy v. South Carolina,* 237 U.S. 180, 185, 35 S.Ct. 507, 59 L.Ed. 905 (1915) (upholding electrocution, which replaced hanging, as a more humane method of execution against *ex post facto* challenge)); *see generally, e.g., Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (detailing the myriad ways in which the prohibition on *ex post facto* laws is intertwined with notions of due process).

6. *See Cal. First Amendment Coal. v. Woodford,* 299 F.3d 868, 873, 876 (9th Cir.2002) (suggesting that the right to public trials extends to require states to make the details of their lethal-injection formulas available to death-row inmates and the public, opining that "[t]o

determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about the 'initial procedures,' which are invasive, possibly painful and may give rise to serious complications"); *see also, e.g., In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (explaining criminal defendants' due process right to be free from "secret proceedings," citing "this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public"); *McGrath,* 341 U.S. at 170, 71 S.Ct. 624 (Frankfurter, J., concurring) ("The heart of the matter is that democracy implies respect for the elementary rights of men, however suspect or unworthy; a democratic government must therefore practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 571, 591, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("The crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is done in a corner or in any covert manner.") (internal quotation marks and alterations omitted).

7. Nor is the panel's reference to the Supreme Court's summary order in *Sizer v. Oken,* 542 U.S. 916, 124 S.Ct. 2868, 159 L.Ed.2d 290 (2004) (summarily granting the State's emergency application to vacate stay of execution),

when it suggested that Sepulvado cannot prevail simply because he pointed to no federal appellate decision that recognized a substantive right to the notice that he seeks. A plaintiff need not have an officially recognized liberty interest before being entitled to notice of the deprivation of that interest and an opportunity to be heard at a meaningful time and a meaningful manner. *See, e.g., Wilkinson,* 545 U.S. at 221, 125 S.Ct. 2384 ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty[.]'") (citations omitted). Accordingly, Sepulvado has succeeded in asserting a cognizable liberty interest in knowing what drug or combination of drugs will be used to execute him and in having an opportunity to object to a revised lethal-injection protocol. The panel's contrary holding was in error.

### III.

This case presents a question of exceptional importance. More executions take place in our circuit than anywhere else in this country, and, due to shortages in execution drugs, some states have increasingly attempted to shroud their lethal injection protocols in secrecy and thereby to avoid judicial review of those protocols. The panel created an erroneous, overreaching circuit precedent that would allow states to continue this unconstitutional practice. Moreover, the procedural due process question presented was moot by the time the panel purported to resolve it. The Constitution and our customs require that we refrain from opining on important questions of constitutional law unless it is necessary to resolve a real, concrete dispute between the parties—a requirement that goes to the very jurisdiction of this Court to hear cases. *See, e.g., Steel Co.,* 523 U.S. at 101, 118 S.Ct. 1003. The panel rendered an advisory opinion purporting to resolve a constitutional question of the utmost importance even though this minimal jurisdictional requirement was not met. The panel thus deprived us of the opportunity to consider how we, as a circuit, will deal with states' secrecy and the changing lethal-injection landscape when the question is properly presented by parties pressing their concrete rights in a live controversy following a full trial on the merits.

Accordingly, I respectfully dissent.

persuasive. While the Supreme Court did not provide reasons for granting the State's application, the only ground asserted by the State in favor of the application was that Oken had delayed seeking a stay until the eve of his execution. *See* Gov't Application to Chief Justice to Vacate Stay of Execution, No. 03–A–1023, *Sizer v. Oken,* 542 U.S. 916, 124 S.Ct. 2868, 159 L.Ed.2d 290 (Jun. 16, 2004). Thus, we may safely surmise that the Supreme Court did not, in its *Oken* order, intimate any opinion as to the merits of the due process question presented to the district court—in particular in light of the Court's repeated admonition that its summary orders do not hold the same precedential value as its decisions on the merits. *See, e.g., Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 500, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ("[S]ummary actions do not have the same authority in this Court as do decisions rendered after plenary consideration[.]"); *Washington v. Yakima Indian Nation,* 439 U.S. 463, 477 n. 20, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979); *Mass. Bd. of Ret. v. Murgia,* 427 U.S. 307, 308, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) ("The question presented in this case was summarily treated in [a prior order of the Court]. Our cursory consideration in those cases does not, of course, foreclose this opportunity to consider more fully that question.").