BENHAM, Justice,
dissenting.
On April 29, 2014, Clayton D. Lockett died of a massive heart attack. Unlike most people, Lockett knew when he would die because he was scheduled to be executed by the State of Oklahoma. Known to Lockett was the fact that he would be injected with a combination of three drugs to exact his death. Unknown to Lockett and his attorneys, despite their calls for transparency, was the source of any of the three drugs. During the attempted execution, Lockett’s veins failed, he reportedly twitched and mumbled, even after having been declared unconscious,[13] and, although officials attempted to halt the execution, Lockett died forty-three minutes after the first drug had been administered.[14] Unknown to us all, at least at the time of this writing, is why the execution did not go as planned.[15]
I write because I fear this State is on a path that, at the very least, denies Hill and other death row inmates their rights to due process and, at the very worst, leads to the macabre results that occurred in Oklahoma. There must be certainty in the administration of the death penalty. At this time, there is a dearth of certainty namely because of the scarcity of lethal injection drugs. Georgia’s confidential inmate state secret statute does nothing to achieve a high level of *319 certainty. Rather, the law has the effect of creating the very secret star chamber-like proceedings in which this State has promised its citizens it would not engage. See State v. Brown, 293 Ga. 493 (1) (748 SE2d 376) (2013). As this Court stated in Atlanta Journal & Atlanta Constitution v. Long, 258 Ga. 410 (1) (369 SE2d 755) (1988), “[J]ustice faces its gravest threat when courts dispense it secretly. Our system abhors star chamber proceedings with good reason.” The fact that some drug providers may be subject to harassment and/or public ridicule and the fact that authorities may find it more difficult to obtain drugs for use in executions are insufficient reasons to forgo constitutional processes in favor of secrecy, especially when the state is carrying out the ultimate punishment.[16]
The majority reasons that Hill has not shown the statute to be unconstitutional under the present circumstances because his claims regarding the specific drug that the State will use to execute him are merely speculative. Admittedly, speculative claims regarding deficiencies in an execution drug are insufficient to sustain a claim of cruel and unusual punishment. See Brewer v. Landrigan, 562 U. S. 996, 997 (131 SCt 445, 178 LE2d 346) (2010). However, the speculation permeating Hill’s claims arises solely from the State’s unwillingness, in light of the secrecy statute, to disclose information that would allow him to make more specific claims.
Hill presented expert testimony showing that compounding pharmacies are not regulated by the FDA, as are ordinary manufacturers of prescription drugs, that a significant number of compounding pharmacies have produced defective drugs in the past, and that a compounding pharmacy, in producing a specific batch of drugs for an execution, could produce drugs that would inflict great suffering on Hill. Much like the State of Oklahoma did in regard to the drugs used in the attempted Lockett execution, in this case the State has only made baseline assurances that the compounding pharmacy it used was able to produce a high quality execution drug. These assurances amount to little more than hollow invocations of “trust us.”[17] While the State produced a redacted laboratory report from an independent laboratory that it claimed had tested Hill’s execution *320 drug, Hill, without knowing even the name of the laboratory, was left again with little more than the State’s invocation of “trust us.”
This Court has held that a statutory provision declaring information to be a state secret must yield to constitutional due process demands. See Head v. Stripling, 277 Ga. 403, 408-409 (1) (C) (590 SE2d 122) (2003) (noting that a defendant’s constitutional rights trump statutory secrecy laws applicable to information about the Board of Pardons and Paroles). Admittedly, that holding was in the context of a Brady evidence suppression claim, a type of claim not directly applicable here because it concerns trial rights. See id. (citing Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963)). However, I find that the general due process concerns at work in Brady naturally apply in this context. Accordingly, I would hold that it is a violation of due process to reject Hill’s cruel and unusual punishment claim as speculative while simultaneously denying him the means by which he has any hope of proving that claim. See Sepulvado v. Jindal, 739 F3d 716, 721-722 (II) (5th Cir. 2013) (Dennis, J., dissenting) (addressing a last-minute change to an execution protocol and relying on “the general principles that changing and keeping secret the details of a pending execution offends the basic constitutional principle of fair notice....”); Hoffman v. Jindal, 2014 U. S. Dist. LEXIS 3025, at *12-13 (M.D. La. 2014) (expressing disapproval of the State’s concealment of details of the prisoner’s impending execution but following “binding precedent” in the jurisdiction that barred relief).
In light of my assessment of Hill’s due process claim, I would grant him access to information identifying the compounding pharmacy that produces his execution drug; although, I would direct that the information be released under appropriate safeguards to minimize any harm to individuals who are simply performing their jobs. See Zink v. Lombardi, 2014 U. S. App. LEXIS 3602, at *4 (8th Cir. 2014) (Bye, J., dissenting) (“Even if Missouri had provided basic guarantees of a regulated lab and licensed pharmacists, the skill-level and experience in compounding of the pharmacist in question is vital to ensuring Taylor is executed in a way which comports with the Eighth Amendment.”). Likewise, because learning the source of the bulk materials used by the compounding pharmacy could lead to information supporting Hill’s cruel and unusual punishment claim, I would also order that information disclosed to Hill. Id. at *5-6 (Bye, J., dissenting) (“Pain to Taylor may not be the fault of the compounding pharmacist, but could also be laid at the feet of suppliers who have failed to provide proper ingredients. Missouri has yet to provide *321 information on the source of any drugs to be used to execute Taylor, leaving open the possibilities the ingredients do not meet legal or medical standards.”).
Decided May 19, 2014
Reconsideration denied June 16, 2014.
Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Joseph J. Drolet, Senior Assistant Attorney General, Sabrina D. Graham, Mitchell P. Watkins, Assistant Attorneys General, for appellants.
Robyn A. Painter, Brian Rammer, Bondurant, Mixson & Elmore, Manoj S. Varghese, for appellee.
In sum, because I believe that the confidential inmate state secret statute denies Hill due process by preventing him from having a legitimate opportunity to prove his cruel and unusual punishment claim, I respectfully dissent to the majority’s decision to reverse the Superior Court’s granting of an interlocutory injunction pending the State’s disclosure of the information indicated.
I am authorized to state that Justice Hunstein joins in this dissent.

 “Mr. Lockett’s apparent revival and writhing raised questions about the doctor’s initial declaration that he was unconscious and are sure to cast doubt on the effectiveness of the sedative used.” Eckholm, Erik, One Execution Botched, Oklahoma Delays the Next, The New York Times (April 29, 2014).

 The execution began at 6:23 p.m. and Lockett was declared dead at 7:06 p.m. McBride, Bailey Elise and Murphy, Sean, Oklahoma Inmate Dies After Execution is Botched, The Associated Press (April 30, 2014).

 “Madeline Cohen, a federal public defender..., said that while prison officials asserted that the problem was only with the intravenous line, ‘unless we have a full and independent investigation, we’ll never know.’ ” Eckholm, Erik, One Execution Botched, Oklahoma Delays the Next, The New York Times (April 29, 2014).

 “Such secrecy undermines the public’s faith in the integrity of the justice system as it conceals from the public, lawyers, and those facing execution critical information about the lawfulness and reality of states’ execution procedures.” The Constitution Project, Irreversible Error: Recommended, Reforms for Preventing and Correcting Errors in the Administration of Punishment, p. 141 (2014). (See www.constitutionproject.org)

 See also Land, Greg, Oklahoma’s Botched Execution is a Wake-Up Call in Georgia, Says Law Professor, Daily Report (May 1, 2014), quoting Professor Michael Mears as follows: “The defense bar is... about protecting the Constitution. How do we know what [drugs] they’re using and not telling us about?”